## Wytheville.

A. L. HAWSE v. J. ST. GEORGE BRYAN, WILLIAM GRAY, COLUMBIA WAREHOUSE DEVELOPMENT CORPORATION.

June 16, 1927.

Absent, Prentis, P.

1. ASSUMPSIT—*Money Received—Appeal and Error—Verdict of the Jury—Case at Bar.*—The instant case was an action of assumpsit for money received. Plaintiffs claimed that the money in question had been paid defendant to meet and finance current expenses of a corporation of which defendant was an officer, which expenses, if a real estate deal went through, would have been ultimately charged against plaintiffs. Defendant claimed that the money in question was paid him as a result of a contract of employment under which he was to perform certain services in behalf of plaintiffs, which services were performed. The real estate deal fell through. The evidence was conflicting.

   *Held:* That it was the function of the jury to weigh the respective contentions of the litigants upon this clear cut issue; and, having found a verdict for the plaintiffs, that verdict must stand unless contrary to the law and evidence or without evidence to support it, unless the court committed error in the admission of evidence or in the instructions.

2. APPEAL AND ERROR—*Exception to Act of Court in Giving Instructions—Ground of Objections not Stated—Rule 22 of the Supreme Court of Appeals.*—Objections to instructions given will not be considered by the Supreme Court of Appeals where the grounds of such objections did not appear from the record as required by Rule 22 of the Supreme Court of Appeals.

3. ASSUMPSIT—*Money Received—Contract—Meeting of Minds—Evidence Held to Sustain Verdict for Plaintiffs—Case at Bar.*—The instant case was an action of assumpsit for money received. Plaintiffs claimed that the money in question had been paid defendant to meet and finance current expenses of a corporation of which defendant was an officer, which expenses, if a real estate deal went through, would have been ultimately charged against plaintiffs. Defendant

claimed that the money in question was paid him as a result of a contract of employment under which he was to perform certain services in behalf of plaintiffs, which services were performed. The real estate deal fell through. The evidence was conflicting.

*Held:* That from the evidence the jury was justified in reaching the conclusion that there was never a meeting of the minds of the parties in a definite agreement; the plaintiffs had no idea of making a contract with defendant to pay him for his personal services and the defendant understood that he had made such a contract.

4. CONTRACTS—*Meeting of the Minds of the Parties—Letter of one of the Parties After the Alleged Contract had Been Made not a Contract—Case at Bar.*—The instant case was an action of assumpsit for money received. Plaintiffs claimed that the money was advanced to defendant as an officer of a corporation to pay current expenses of the corporation, whereas defendant claimed that the money was paid him for personal services to be rendered plaintiffs. A letter of defendant to one of the plaintiffs, acknowledging receipt of the money, stated that it was received in consideration of personal services to be rendered by defendant to the plaintiffs. This letter was written after the alleged contract was made and after the money was paid and was not acted on by any of the plaintiffs.

*Held:* That the letter itself did not constitute a contract between the parties, never having been accepted or acted upon by the plaintiffs, but was merely a document which the jury might consider along with the other evidence as to what the contract was.

5. ASSUMPSIT—*Money Received—Instructions Fairly Covering Contention of Parties—Case at Bar.*—In the instant case, an action for money received, where plaintiffs claimed that the money in question was advanced to defendant as an officer of a corporation for the current expenses of the corporation and defendant claimed that the money was paid him for personal services to be rendered plaintiffs, the instructions fairly submitted to the jury the question as to what the contract was. The evidence was conflicting, but there was sufficient evidence to support a verdict for the plaintiffs.

*Held:* That a verdict and a judgment for the plaintiffs could not be disturbed on appeal unless the court committed reversible error in admitting or excluding evidence.

6. WITNESS—*Cross Examination—Responsiveness of Answer to Question—Case at Bar.*—In an action for money received, counsel for defendant objected that the answer of a witness on cross examination was no answer, but the court said it could not make the witness answer it any better.

*Held:* That there was no error in the ruling of the court, not only because the question was immaterial to the real issue in the case, but also because the answer was responsive to the question.

7. ASSUMPSIT—*Money Received—Contradicting a Witness—Agency—Case at Bar.*—The instant case was an action for money received. Plaintiffs claimed that the money in question was paid to defendant as an officer of a corporation to be used for the current expenses of the corporation, whereas the defendant claimed that the money was paid for personal services. A witness, whose evidence in chief supported the contention of defendant, was asked on cross examination if he had not made a statement that defendant ought to give back the money to the plaintiffs, to which he replied in the negative. One of the plaintiffs was asked whether this witness's testimony was correct, to which plaintiff replied that it was not.

   *Held:* That the question was competent for the reason that if the witness made the statement attributed to him, it was in conflict with his testimony in favor of defendant; and, as he had stated that he had not made such a statement, it was proper to admit evidence contradicting that assertion because it related directly to the matter in controversy and because the witness was defendant's agent and what he said with respect to the transaction was competent evidence.

8. ASSUMPSIT—*Money Received—Witnesses—Cross Examination—Reexamination—Case at Bar.*—In the instant case, an action for money received, plaintiffs' contention was that the money was paid defendant as an officer of a corporation to be used for the current expenses of the corporation, whereas the defendant contended that the money was paid him for personal services to be rendered plaintiffs. On reexamination, one of the plaintiffs was asked to look at a letter from defendant and state whether or not that letter was a full, frank and clear statement in his judgment, to which plaintiff answered that it was not. On cross examination, this plaintiff had been asked whether the letter stated the true reason why the money was paid to defendant.

   *Held:* That under these circumstances, the question to this plaintiff on reexamination was proper.

9. APPEAL AND ERROR—*Rulings on Evidence—Grounds of Objections not Stated—Rule 22 of the Supreme Court of Appeals.*—Where no ground of objection to the admission of evidence was stated as required by Rule 22 of the Supreme Court of Appeals, the Supreme Court of Appeals will not consider an exception relating thereto.

10. ASSUMPSIT—*Money Received—Evidence—Question to Plaintiff as to Whether Letter of Defendant Acknowledging Receipt of the Money and Stating Purpose for Which Received was Incorrect—Case at Bar.*—The instant case was an action of assumpsit for money received. Plaintiffs contended that the money in question was paid to the defendant to be used for the current expenses of a corporation of which defendant was an officer, whereas defendant contended that the money was paid to him for services to be rendered plaintiffs. One of the

plaintiffs was asked whether a letter from defendant to one of plaintiffs acknowledging the receipt of the letter correctly stated the purpose for which the money was paid.

*Held:* That the question was a proper one, and plaintiff's answer only restated what he had previously testified to, that the money was advanced for expenses of the corporation.

11. ASSUMPSIT—*Money Received—Evidence—Testimony of One of the Plaintiffs that Money was not Advanced as Personal Compensation to Defendant—Case at Bar.*—The instant case was an action for money received. Plaintiffs contended that the money was paid the defendant to be used for the current expenses of a corporation of which defendant was an officer, whereas defendant claimed that the money was paid him for personal services. One of the plaintiffs was asked whether defendant had informed him that the money in question was to go to defendant personally as a commission, to which the witness replied that the defendant had not so informed him.

*Held:* That the question and answer were admissible.

Error to a judgment of the Circuit Court of the city of Richmond in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Meredith & Meredith* and *Wyndham R. Meredith*, for the plaintiffs in error.

*Sands, Williams & Lightfoot*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

A. L. Hawse, defendant in the court below, and hereafter so designated, is here complaining of a judgment of $8,500.00 with interest from December 15, 1925, against him and in favor of J. St. George Bryan, William Gray and Columbia Warehouse Development Corporation, a corporation, rendered by the Circuit

Court of the city of Richmond, on the 31st day of March, 1926, in an action of trespass on the case in assumpsit.

The assignments of error relate to alleged errors on the part of the trial court in refusing to set the verdict of the jury aside; in permitting certain questions propounded to, and answers made by, certain witnesses for the plaintiff; to the giving of instructions Nos. 1, 2, 3 and 4, at the request of the plaintiffs; and the refusal of the court to give instruction No. 5 asked for by the defendant.

The issue in the case is whether the $8,500.00 sued for, and admittedly paid to the defendant, was paid to him, as the result of a contract of employment under which he was to render plaintiffs services in connection with a certain real estate deal pending at the time of the payment, performed on his part, as the defendant contends, or whether, as the plaintiffs below contend, the $8,500.00 was paid defendant as an officer of the Bradley Hills Syndicate, a corporation of which he was a stockholder and its treasurer, the properties of which were involved in the pending deal. Counsel for plaintiffs thus express the contention of the parties in their brief: "In the pleadings and testimony Hawse claims that said money admittedly received by him was paid to him as a result of a contract of employment under which he was to do and perform certain services for and on behalf of the plaintiffs and for which he was to receive the total sum of $12,500.00, $8,500.00 of which being the cash involved, and the further sum of $4,000.00 evidenced by a note of the plaintiff, William Gray; while the plaintiffs on their part asserted that they had never employed Hawse; that they looked upon Hawse in the transaction as an officer and representative of the Bradley Hills Syndicate, and that the

sum of $8,500.00 cash and the note of William Gray were delivered to him as such upon his representations that both were to be used to meet and finance certain current expenses involved in the development of Bradley Hills, which expenses would ultimately be charged against the plaintiffs in the proposed exchange of properties; that Hawse, moreover, represented that this credit advancement was rendered necessary by reason of certain of his associates being away at the time."

The defendant contends that the object of the payment of the $8,500.00 by plaintiffs is fully set out in a letter, bearing date June 23, 1924, addressed to Mr. J. St. George Bryan, one of plaintiffs, acknowledging payment of the $8,500.00. That letter is as follows:

*"June 23, 1924.·*

"MR. J. ST. GEORGE BRYAN,
    *"City.*
"DEAR MR. BRYAN:

"This acknowledges receipt from you, thru Mr. Abbott, of your two checks aggregating $8,500.00, and I am still to receive note of Wm. Gray for $4,000.00— all of which are given and received for the purpose of having me give to Mr. Abbott such assistance as he has asked for, being a letter authorizing him to make a deal for the Manhattan Life Insurance building, No. 66 Broadway, New York city, subject to a first mortgage of $2,000,000.00, bearing interest at three and one-half per cent per annum, payable semi-annually, and give therefor 2,074 acres of the property owned by the Bradley Hills Syndicate, Incorporated, free and clear of all encumbrances.

"I am further to go to New York and use my best efforts to help Mr. Abbott get such a contract, and when this is done it is understood that you and your

associates are to close deal for the Bradley Hills property at the price of $1,500,000.00, plus whatever amounts have been expended since May 9, 1924, and we agree to buy the Maplewood apartments and Columbia warehouse for $1,250,000.00.

"The Bradley Hills property will be subject to mortgages aggregating approximately $625,000.00, and your properties subject to $460,000.00—you to pay the difference in cash. Settlement to be reckoned as of June 1, 1924; also note of Wm. Gray is then to be paid.

"It is further understood that should you fail to make this settlement on or before July 15, 1924, that we shall be at liberty to close the deal ourselves for our own account, and without any obligation to you.

"Yours very truly,
"(Signed) A. L. HAWSE."

[1] It will thus be seen that the sole function of the jury was to weigh the respective contentions of the litigants upon this clear cut issue, and it, having found a verdict for the plaintiffs, that verdict must stand unless, as will be seen, the verdict is contrary to the law and the evidence or is without evidence to support it, or unless the court committed error in the admission of evidence.

[2] The objections and exceptions to the action of the court in giving instructions Nos. 1, 2, 3 and 4 and in refusing to give instruction No. 5, are eliminated from consideration because it does not appear from the record that the objections to instructions 1, 2, 3 and 4 offered by the plaintiffs and given by the court over the objection of the defendant, stated the ground of such objection, as required by Rule 22 of this court. We may say, however, that we have carefully examined the instructions, and there was no reversible error either in giving Nos. 1, 2, 3 and 4, or in refusing No. 5.

Those clearly and properly presented the issue of fact to the jury.

[3] With respect to the action of the trial court in overruling the motion to set aside the verdict upon the ground that it is contrary to the law and the evidence and without evidence to support it, the sole question upon this assignment of error, in view of the verdict of the jury, is whether the verdict is without legal evidence to support it. A careful analysis of the evidence has led us to the conclusion that there is a direct conflict in the evidence as to what the contract between the parties was, and that the jury was fully justified in reaching the conclusion, as no doubt it did, that there was never a meeting of the minds of the parties in a definite agreement. It is perfectly apparent from a careful reading of the evidence that the plaintiffs had no idea of making a contract with the defendant to pay him $12,500.00 for personal services. On the other hand, it is perfectly clear that the defendant understood that, as evidenced by his letter, copied above, he had made such a contract.

The pertinent facts are as follows:—The Columbia Warehouse Corporation, of plaintiffs, the stockholders of which were Thomas Gresham, president, R. L. Gordon and Edgar Allan, Jr., prior to May 20, 1924, gave William Gray an option to purchase its property at First, M. and Pierce streets, Washington, D. C. Gray assigned this option to A. V. Abbott. J. St. George Bryan and R. L. Gordon owned the Maplewood apartments in Richmond. A. L. Hawse, defendant, was a stockholder in the Bradley Hills Corporation, and its treasurer.

Mr. Bryan testified that in the spring of 1924: "Mr. Gordon came in contact with Mr. Abbott. Mr. Abbott at that time had an option to sell Bradley Hills, ap-

proximately 2,200 acres of land adjacent to the city of Washington. Mr. Gordon got into negotiations with him and found that we could swap our property for Bradley Hills. But, because Bradley Hills was very valuable and ours was not so valuable, Mr. Gordon, who was also interested in the Columbia Warehouse Corporation, got those gentlemen to come in and we pooled our interests together as opposed to Bradley Hills on the other side. Mr. William Gray was taken into the proposition. After the proposition had gone on for a while, it was changing rapidly.  *   *   *   * *   *   * Mr. Gordon and I both wrote a letter and sent it to Mr. William Gray, in which we said that he was at perfect liberty to negotiate for us in any way or at any time he saw fit; in other words, he was not to report back to us in any way, because it was impossible for us to keep up with it; the figures were so large and so complicated that we got twisted up every time we went over them. That was the beginning of the whole thing, as far as I was concerned. I kept up with it only to the extent of hearing what was done. All the negotiations on our part were conducted by Mr. William Gray for us; he was the one who took the different trips and inspected the different properties; he was the one who did the work for us.''

On the 6th day of May, 1924, Gordon, Bryan and Gray by written agreement authorized Abbott to sell for them the Maplewood apartments and the Columbia warehouse property and to use the funds in consummation of the option which Abbott held on the Bradley Hills property. The plan, after this deal was consummated, was to exchange the Bradley Hills property in part payment for the Manhattan Life Insurance Building, No. 66 Broadway, New York city. Accordingly, on June 16th, Abbott solicited and secured from the Bradley Hills syndicate the following authority

to conduct the sale or exchange of the Bradley Hills property.

*"June 16, 1924.*

"ARTHUR A. ABBOTT, ESQ.,
    *"Richmond, Va.*
"DEAR SIR:

"You inform me that on behalf of the Bradley Hills Syndicate, Incorporated, you have presented a proposition for the exchange or purchase of the Manhattan Life Insurance building, No. 66 Broadway, New York city, and that you desire to file with the Manhattan Life Insurance people your authority to represent the Bradley Hills Syndicate, Incorporated.

"We have heretofore given you such authority and if you require any further authority, this is to give you full authority to conduct the sale or exchange as set forth in your letter of June 14th; to wit, the conveyance of about 2,075 acres of the property of the Bradley Hills Syndicate, Incorporated, located in Montgomery county, Maryland, in the Country Club district, free and clear of all encumbrances for the Manhattan Life Insurance Company's building Nos. 64 and 66 Broadway, New York city, subject to a purchase money mortgage of $2,000,000.00, payable ten years after date, bearing interest at three and one-half per cent per annum, payable semi-annually.

"Yours very truly,
"BRADLEY HILLS SYNDICATE, INC.,
"By A. L. HAWSE, Treas."

It will thus be seen that Abbott was undertaking to conduct the exchange of the properties for Gordon, Bryan and Gray on the one hand, and for the Bradley Hills Syndicate, acting entirely through Hawse, on the other, and this was clearly understood by all the parties. Gray, as Bryan testified, was the authorized mouth-

piece for Bryan and Gordon, and he conducted most if not all of the negotiations with Abbott, who also represented and conducted negotiations for the Bradley Hills Corporation. With Abbott as the gobetween there was very little negotiation between Gray and Hawse.

Gray testified in part as follows:

"I was introduced by Mr. Gordon to Mr. Abbott. Mr. Abbott had an option on this Bradley Hills property from Mr. Hawse, and he also had an option on these apartment houses belonging to Mr. Bryan and Mr. Gordon, and he wanted to get an option on the warehouse property in Washington belonging to Mr. Gresham and Mr. Allan and Mr. Gordon. I got that option from Mr. Gresham and turned it over to Mr. Abbott.

"Q. Do you recall any information on the subject of the $12,500 requested or demanded by Mr. Hawse directly or through Abbott? If so, tell the jury the circumstances of it.

"A. When Mr. Abbott, Mr. Hawse and myself were in Washington in the original transaction of getting an option on the Bradley Hills property for Abbott through the real estate brokers there, somebody and Shannon, I forget the other name, the question came up of certain improvements that were being made at Bradley Hills, roadways and certain improvements, and if Mr. Abbott carried the deal through, these payments for improvements would have to be met in addition to the price set out in the contract. They agreed to do that provided it did not exceed $25,000.00. I don't think there is anything in writing to show that, so far as I know. I was a party to the transaction and that was agreed between the men; that is all.

"Q. Now, Mr. Gray, I ask you whether or not you recall any demand being made concerning $12,500.00

from Hawse during the month of June, along about June 23rd, and if so, what were the circumstances under which that money was put up?

"A.   I think along in June some time I was in Mr. Bryan's office, Bryan, Kemp and Company, when Mr. Abbott came in.   Mr. Bryan and I were sitting there, and Mr. Abbott said that Mr. Hawse demanded $12,500.00.   The option Abbott had, as I understood, at that time only had fifteen or twenty days to run, and Mr. Abbott and I were trying to get Mr. Hawse to extend the option.   So Mr. Abbott comes over and says that the only way that Mr. Hawse would extend it would be that we were to give him $12,500.00 to pay for these improvements that had been going on from the time we entered into negotiations; that the reason he wanted that was that Mr. Mann and all the officers of the Bradley Hills Syndicate were out of the city on their holidays, and it devolved on him to take care of these obligations until they came back.   It was then, I think—well, in two or three days or maybe not that long—that I went down to Mr. Hawse's office by appointment, met Mr. Abbott and Mr. Hawse there, and we talked over this proposition of the $12,500.00.   I then was equally interested with the Bryan, Gresham and Gordon crowd, and felt that it was up to me to take care of one-third of it.   I told Mr. Hawse very frankly that I did not have $4,000.00; that the only way I could do it would be to give him my note with the positive understanding that if the deal did not go through it would be returned; and he accepted the note under those conditions.   It was then that Mr. Bryan, through Mr. Abbott—I was in Mr. Bryan's office at the time—gave him two checks, I think, aggregating $8,500,00 and Mr. Abbott brought that letter back after giving the checks to Mr. Hawse.

"Q. You say, Mr. Gray, that he agreed to accept your note for your proportional part of it, $4,000.00, and the note to be given back to you if the deal did not go through?

"A. Yes, sir.

"Q. Was there any intimation or suggestion from Hawse, directly in the conversation or through Abbott, that he was making any demands for commissions or brokerage on the side, and that the money was to go to him personally and not to meet these expenses?

"A. No, none whatever.

"Q. When did you first hear this suggestion that he was claiming the money personally, and, in point of fact, had never turned it in to the Bradley Hills Syndicate?

"A. I should say along in the early part of October. I would not like to say positively; I think that is about right.

"Q. In your arrangements for settlement with the Bradley Hills Syndicate, there was to be an adjustment, going back to a certain date in May, as to expenses, was there not?

"A. Not to exceed $25,000.00.

"Q. In whatever occurred about the money you put up represented by your note, and the $8,500.00 put up by the other two gentlemen in money, it was all asked for the same purpose?

"A. All asked for the same purpose. I had rather have had the checks than the note.

"Q. Now, let me ask you this: Did Mr. Hawse acknowledge the receipt of that $4,000.00 note of yours?

"A. He did, sir.

"Q. Look at that letter and state if that is the letter acknowledging receipt of it?

"A. (Examining.) Yes, sir."

"The following letter was introduced in evidence and read to the jury:

*"June 23, 1924.*

"MR. WM. GRAY,

"*Richmond, Va.*

"DEAR MR. GRAY:

"This acknowledges receipt through Mr. Abbott of your note for $4,000.00, dated today and payable on demand.

"Mr. Abbott has already made arrangements satisfactory with me to guarantee the payment of your note and its return to you in case this deal falls through.

"Yours very truly,

"A. L. HAWSE."

In response to the question: "Now, as to your paying $8,500.00 over to Mr. Hawse, will you please state to the jury the circumstances under which that was paid?" Mr. Bryan testified: "A.   The contract we had with the Bradley Hills Corporation was to the effect that we were to pay them a certain sum of money, which was a very large amount of money, as of a certain day. We were also to assume all expenses from that date on, which I was told amounted to $2,500 a week, such as planting trees, fixing sidewalks, and things of that kind.   Negotiations were dragging along and dragging along and dragging along, and Mr. Gray got an extension from Mr. Gresham on the Columbia warehouse and Mr. Gordon willingly gave him an extension on the Maplewood apartments.   Then Mr. Abbott came up to my office and said that Mr. Hawse said that he had to have $12,500.00, because Mr. Mann was out of town and there was no way of locating him; that Mr. Mann was at his country place in New York or New Hampshire.   Billy Gray said that he didn't have it.   I was to put up around $4,200 for my share.

the Columbia Warehouse Corporation was to put up around $4,200 for their side, and Mr. Gray $4,200.00 for his share; he had become part and parcel of us. I put up $4,200 for our side and $4,200 for the Columbia Warehouse Corporation because Mr. Gresham was not in town or anybody for their side, and they in turn gave me their check. I think I gave a cashier's check for one.

"Q. Did you say that Mr. Abbott told you about Mr. Mann not being in town?

"A. I won't say that. I will say that Mr. Gray or Mr. Abbott told me that. They were together; they were running backwards and forwards so continuously that I could not under oath say which one gave me the information."

Mr. Gordon testified in response to the question: "Do you recall the circumstances under which a demand was made by Mr. Hawse in connection with this $12,500.00 in June, 1924; and if so, state the circumstances of that demand, and the representations made to you, as you understood them?

"A. Yes, sir. I was told by Mr. Abbott, I think, that we had to put up $12,500.00, which was money needed by Bradley Hills Syndicate for the payment of payrolls and other amounts. I went to see Mr. Gresham, who was president of the Columbia Warehouse Development Corporation, and we had a meeting together with Mr. Allan, and we decided, upon that representation, to pay one-third of that amount. We then gave a check to Mr. St. George Bryan for $4,133.33, I think was the amount, one-third of $12,500.

"Q. Mr. Gordon, was there to your knowledge any suggestion or request from Hawse, directly or indirectly, through Abbott, that this money was to go to him

personally, or to any other purpose than what you have stated?

"A.   I did not know of any such."

No objection was made to the introduction of any of this testimony.

[4] It will avail nothing to pursue this line of evidence on behalf of plaintiffs as to what they thought the contract was.   Abbott's testimony is in some respects in conflict with this and Hawse's testimony is diametrically in conflict with it, but the theory of counsel for defendant is that the letter of June 23, 1924, from Hawse to Bryan, was the contract between the parties because of its contents and because as counsel claim it was accepted and acted upon by Bryan and Gray.   As to its contents, it is a receipt for the checks aggregating $8,500.00 and refers to the Gray note for $4,000.00 and an ex parte statement by Hawse as to the purpose for which they were sent him and was made after the contract was made and of course after the money was paid.   It was written to *one* of the plaintiffs and was not acted on by any of them, because as soon as the deal fell through they demanded a return of their money and when it was not returned brought action for its recovery.

It is true Mr. Bryan, under persistent and skillful cross examination in regard to the Hawse letter of June 23, 1924, somewhat weakened his testimony in chief as to what the $8,500.00 was paid Hawse for, by admitting that at the time of the receipt of the letter he thought it came near enough to stating the object of the payment, but his interpretation of what the letter meant, a layman, was entirely different from that of counsel.   After he had been led through the mazes of an analytical interpretation of the document he concluded his testimony:   "Q.   Now, then, are you willing

to state to the jury that you think now that those checks were given for the purpose of paying expenses?

"A.   I can only state to the jury, Mr. Meredith, the conditions under which I gave the checks.

"Q.   I am asking you now if you are going to make the claim that you said you made before on the belief  *  *  *  *  *.

"A.   Yes, sir; I still make the claim.

"Q.   You still say that the $8,500.00 to the best of your knowledge and belief was given to pay for repairs on the property.

"A.   Yes, sir.

"Q.   And not for services he was to render?

"A.   Yes, sir."

But Mr. Bryan was one of a number of plaintiffs and was very inactive in the transaction.  Mr. Gray, who was authorized to act for all the plaintiffs, and did, testified as to the Hawse letter.

"Q.   Mr. Gray, you say that you and Mr. Bryan saw the letter of June 23rd, do you?

"A.   I saw it afterwards; yes, sir.

"Q.   Mr. Bryan said that the reasons stated in that letter are a correct statement.  Is that so, in your opinion?

"A.   No, sir.

"Q.   You differ with him on that matter?

"A.   Yes, sir.

"Q.   Did you tell him so?

"A.   Tell who so?

"Q.   Did you tell Mr. Bryan that the thing was not as you thought it ought to be expressed?

"A.   I didn't see the letter until the day afterwards, after the money had been paid, and I told Mr. Bryan I would not accept that letter."

But if Mr. Bryan is to be discredited and bound by apparent inconsistencies, Mr. Hawse should likewise be bound by his. In his letter to Mr. Bryan of June 23rd, with whom he had had no direct dealing, he acknowledged receipt of the $8,500.00 and refers to Gray's note for $4,000.00, all of which he says were given and received for services to be rendered. On the same date in a letter to Gray he acknowledged receipt of the same note for $4,000.00, and pledges its return to Gray "in case the deal falls through."

The exchange of properties failed of consummation. Plaintiffs contend that the failure was for one reason and defendant for another, but there is evidence to support the plaintiffs' contention that Hawse had represented to them that there was $200,000.00 in the Bradley Hills treasury from the sale of 123 acres of the Bradley Hills tract which would be available for use in the deal for the Manhattan property, when as a matter of fact no such sale had been made. Whatever the reason, if plaintiffs were right in their contention as to the contract under which the $8,500.00 was paid Hawse they were entitled to recover it back.

[5] In view of all this it cannot be said that the verdict of the jury is without evidence to support it, and it is clear that the trial court, in the instructions, fairly submitted to the jury the question as to what the contract was. (The instructions appear in the margin.)*

---

*1. The court instructs the jury that 'the defendant in this case asserts the right to retain the sum of $8,500.00 paid to him by the plaintiffs for which they have sued to recover in this case upon the ground that this sum was due him by reason of a contract made and entered into between him and the plaintiffs on or about June 23, 1924, under the terms of which he was to be paid the sum of $8,500.00, and the further delivery unto him of a note of the defendant, William Gray, in consideration for his agreeing to render certain services; namely, to aid Messrs. Gray and Abbott in their effort to negotiate and deal with the Manhattan Life Insurance Company for the exchange of properties, and, further, to secure for them in effecting such deal the sum of $350,000.00. The court instructs the jury that the

It is also clear that the verdict cannot be disturbed unless the court committed reversible error in admitting or excluding evidence. Certificates of exception Nos. 2, 3, 4, 5, 6 and 7 relate to the action of the court with reference to the admission of evidence. Certificate No. 2 sets out that the witness Gresham was asked the following question on cross examination: "Do you claim to the jury that the failure to make the sale to the cemetery company broke up your deal?"

The witness answered:

"I mean to say that there was no money in this deal except what we put in and Mr. Hawse's disclaimer that there was any money in hand appealed to me as a complete lie down in the transaction, and I would proceed to sell my property or operate it in some other way."

burden of proving such contract is upon the defendant, and if they believe from a fair preponderance of the evidence that such a contract was made and entered into between the parties and the defendant, and that in pursuance thereof the defendant did perform obligations imposed by such contract, they must find for the defendant. But if the jury believe from the evidence that such contract was not made between the plaintiffs and the defendant, and that the plaintiffs understood and agreed when they paid the money involved in this controversy that the same was paid, as they understood, to defray certain expenses then being incurred in the development of a piece of property referred to in the testimony belonging to the Bradley Hills, Incorporated, a corporation, of which the defendant was an officer, under such circumstances there was no contract between the plaintiff and the defendant entitling the defendant to money so received by him, and the jury should find for the plaintiffs for such sum as the evidence shows was paid to the said Hawse under such circumstances. The court further instructs the jury that the burden is upon the plaintiffs to prove their case by a preponderance of the evidence. Given.

2. The court instructs the jury that if they believe from the evidence that the plaintiffs, when they paid unto the defendant, A. L. Hawse, the sum of $8,500.00 sued for in this action, made said payment upon representations made to them by A. L. Hawse, directly or through A. V. Abbott, that said money was to go to the meeting of certain payrolls then being incurred in the development of the property belonging to the Bradley Hills, Incorporated, of which the said A. L. Hawse was an officer, and that said plaintiffs were not informed that said A. L. Hawse was to receive said sum of money personally for his own benefit, the jury shall find for the plaintiffs. But if the jury believe from the evidence that it was understood and agreed between the parties that the sum of $8,500.00 and the note of the plaintiff, W. B. Gray, was being given to Hawse personally for services rendered or to be rendered, they must find for the defendant. Given.

After which the following colloquy occurred between counsel conducting the cross examination and the court:

"Mr. Meredith: If your Honor please, I don't think that is an answer to my question.

"The court: That is for the jury. I cannot make him answer it.

"Note: At the request of Mr. Meredith, the question and answer are again read.

"Mr. Meredith: Does your Honor still refuse to make him answer it?

"The court: I cannot make him answer it any better.

"Mr. Meredith: Note an exception."

[6] There was no error in the ruling of the court, not only because the question was immaterial to the real

3. The court instructs the jury that while they may consider the letter of June 23, 1924, introduced in evidence in this case, namely the letter from A. L. Hawse to J. St. George Bryan, in connection with other facts in the case as to the purposes for which the sum of $8,500.00 mentioned therein was being given and received, yet the jury are instructed that if they believe from the evidence that the said J. St. George Bryan and his associates, the plaintiffs in this action, were not informed that the money referred to therein was to go to A. L. Hawse personally, and they did not so understand that said money so paid was being paid to him for his personal use and benefit, the jury shall find for the plaintiffs, notwithstanding any expression contained in said letter inferring a contrary meaning. Given.

4. The court instructs the jury that if they believe from the evidence that at or before the time when the plaintiffs paid over to A. L. Hawse the sum of $8,500.00 that said A. L. Hawse had represented to the plaintiffs that there was in the treasury of his company, the Bradley Hills, Incorporated, the sum of $200,000.00 available for use in the negotiations then pending for the exchange of properties then under consideration, and the jury further believe that if it had been known that said $200,000.00 was not available, that said sum of $8,500.00 would not have been delivered over by the plaintiffs to the defendant, then the jury are instructed that if said representations of said Hawse were not true, and that said sum of $200,000.00 was not available, then the jury must find for the plaintiffs for such sum as was paid over upon such representations. Given.

5. The jury are also instructed that, if they believe from the greater weight of the evidence that $8,500.00 was paid to the defendant for compensation for his assistance to be rendered in consummating an exchange of the properties of the Bradley Hills, Incorporated, for certain property of the Manhattan Life Insurance Company of New York, as set forth in the letter of the defendant to J. St. George Bryan, dated June 23, 1924, and that the defendant rendered reasonable and proper assistance, then the jury must find for the defendant.

issue in the case, but also because the answer is responsive to the question. The plaintiffs alleged in their declaration that Hawse represented to them that his company had sold 120 acres of the 2,200 acres known as Bradley Hills for a cemetery for $200,000—and that this sum was in the treasury of the company and would be available in a trade for the Manhattan Life property. Some of the plaintiffs testified that the deal fell through when it was ascertained that no such sale had been made and there were no funds in the treasury.

[7] Certificate of exception No. 3 relates to a question propounded to the witness Abbott on cross examination. He was asked: "Didn't you go so far as to say the $8,500.00 and Gray's note, when the question came up of giving the money to Mr. Hawse, didn't you go so far as to tell Mr. Bryan, Mr. Gray and Mr. Williams in my presence that Hawse ought to give that money back, that in point of fact Hawse stole that money?

"A. No, I didn't make any such statement."

Thereupon the defendant's counsel objected to the question as follows:

"He was the agent of both parties there, and what he said in Mr. Sands' office doesn't bind us at all."

The court overruled the objection and the defendant excepted.

Afterwards the witness, Bryan, upon reexamination, was asked:

"State whether Mr. Abbott's testimony is or. is not correct; that it was given as commissions for raising any sum of money, and was not given to meet temporary payrolls as you have testified?"

Whereupon defendant's counsel objected as follows:

"If your Honor please, I make the same objection I

made a little while ago. . He was the agent of both parties to the transaction there and his testimony is not legal."

But the court allowed the witness to start to answer as follows:

"A. Mr Abbott, when he came over to get this money, told me point blank—"

Whereupon the plaintiff's counsel said:

"I am asking you what Abbott said to us in my office."

Whereupon the court, over the defendant's objection as above stated, allowed the witness to answer as follows:

"He never varied one second from the fact that the money was to pay the $2,500.00 a week, which he said in some cases Mr. Hawse had to advance out of his own pocket because Mr. Mann or other principals were out of the city. He never for a second intimated any other purpose than that, and I was surprised when he intimated it today. In your office he made the same statement, that he hoped to God we would sue Mr. Hawse and make him pay the money back, and that he, Mr. Abbott, had seen Mr. Hawse and told him so."

The question asked the witness was competent for the reason that if Abbott made the statement attributed to him it was in conflict with his testimony as to the object of the payment of the $8,500.00, which in general corroborated Hawse, and as Abbott had, on cross examination, stated that he had not made such a statement, it was proper to admit the evidence contradicting his assertion that he did not make such a statement, because it related directly to the matter in controversy and because when he went to plaintiff's and secured the $8,500 and the Gray note he was Hawse's

agent and what he said with respect to that transaction was competent evidence, which the jury had a right to consider along with all the other evidence in the case upon this feature of it.

[8] Certificate of exception No. 4 relates to a question asked Mr. Bryan on reexamination: "Look at this letter, which you have been testifying about, the letter from Hawse, dated June 23rd, and state whether or not that letter is a full, frank and clear statement in your judgment? ·

"A. It is not."

To which question and answer the defendant objected, but the court overruled said objection.

And the defendant excepted to the ruling of the court.

No ground of objection is assigned as required by Rule of Court 22. However, the objection is without merit. On cross examination counsel had asked Mr. Bryan: "Q. Mr. Bryan, are you prepared to state, from your recollection of the transaction, that that letter does not state the true reason why that money was paid to Mr. Hawse?" And the court in ruling on the question set out in the bill of exception said: "I think, since you asked his opinion of the letter, Mr. Sands has a right to ask his opinion. The ruling of the court is that if Mr. Meredith had not asked the witness for his opinion of the letter, this question would be objectionable; but, inasmuch as Mr. Meredith has asked him his opinion of the letter, this question is proper."

We agree with the court that under these circumstances the question was proper.

[9, 10] Certificate No. 5 relates to an objection to the following question propounded Mr. Bryan on redirect examination: "Now, Mr. Bryan, taking up this

letter, in what particular does the latter state, or fail to state, correctly as to the receipt of the money that you paid him?" There is no reason assigned for the objection. But even if there had been it is a perfectly proper question, and Mr. Bryan's answer only restated what he had previously testified to, that the money was advanced for expenses on Bradley Hills.

[11] It is perfectly clear that there is no merit in the exceptions to the questions and answers set out in bills of exceptions Nos. 6 and 7. They are as follows: No. 6. Upon re-examination the witness, Gray, was asked the following question: "Q. Mr. Gray, Mr. Hawse said here that he informed you as to the purpose for which this $12,500.00 was to be used, and that information was to the effect that it was to go to him personally as commissions. Did he, or not, make such a statement to you, or was any expression made to you at either one of your conversations with him in which the matter came up, that would satisfy you as to such purpose?"

To which the witness answered: "No, sir."

The defendant objected to the question and answer, but the court overruled the objection and the defendant excepted.

No. 7 is as follows: Upon reexamination the witness, Gray, was asked by Mr. Sands: "Were you present at my office in the latter part of last year, some time early in December, at a conversation at which Mr. Abbott was present, as well as Mr. St. George Bryan?

"A. I was.

"Q. You heard Mr. Abbott's testimony here on the stand this afternoon, in which he said that he did not make any statement at that time that Mr. Hawse was not to receive this money for himself, but for the Bradley Hills Syndicate. Is that statement correct?"

Whereupon the defendant's counsel objected to the

last question, but the court overruled the objection,
and an exception was noted to the ruling of the court.
Thereupon the witness answered as follows:

"A.  That is not correct.   Mr. Abbott said that Mr.
Hawse had said, just as Mr. Abbott said to Mr. Bryan
and myself before when he got the checks, that Mr.
Hawse wanted that money, $12,500.00, to defray the
expenses of the Bradley Hills Syndicate, which was
then being paid by himself in the absence of other of-
ficers of the Bradley Hills Corporation.   Mr. Abbott
further said that he told Mr. Hawse he ought to pay it
back, and that he would so testify, and that we ought
to sue him for the money."

To which answer the defendant objected, but the
court overruled said objection, and the defendant ex-
cepted.

Not only are the objections without merit but no
reason is assigned as required by Rule 22, for the ob-
jections.

Upon the whole case it is apparent that the evidence
is hopelessly conflicting as to what the contract was;
that Abbott had options on the properties of both the
plaintiffs and the defendant; that whatever contract
was made for exchange of properties he was largely in-
strumental in making and that he acted as agent for
both sides in making the contract; but that Hawse
himself also communicated with Gray on all the vital
questions involved, as Gray testified; that Gray had
full power to act for the plaintiffs and he testifies very
definitely as to the terms upon which the $8,500 was
paid Hawse; that Hawse's letter of June 23, 1924, to
St. George Bryan, was in no sense a contract, never
having been accepted or acted upon by the plaintiffs;
that, as the trial court held, it was merely a document
which the jury might consider along with the other evi-

dence as to what the contract was; and finally, that the instructions, as appears from a perusal of them, fairly submitted the issues to the jury, and that there was no error in the admission or exclusion of evidence. The judgment of the trial court is plainly right and is therefore affirmed.

*Affirmed.*