# Richmond.

## Indemnity Insurance Company of North America v. Hettie I. Davis' Administrator.

### May 24, 1928.

1. Indemnity Insurance—*Automobile Indemnity Policies—Pecuniary Loss or Damage by Assured—Case at Bar.*—The instant case was an action by an administrator against an indemnity company on a judgment obtained by the administrator against the assured for the death of his decedent. The policy was clearly a contract to indemnify the assured against liability arising out of claims for damages against him and not merely an agreement to indemnify him against loss sustained and actually paid by him. The company was bound by the terms of the policy to indemnify the assured, by paying any loss sustained by him "by reason of the liability imposed by law," in case of injury to or the death of third persons, and to pay as well the court costs in any suit against the assured as also the interest upon any judgment in the suit. The policy also contained the usual stipulation that the indemnity company would defend on behalf of assured suits and actions against him for alleged injuries. Under such a policy the cause of action of the assured is complete and the assured can recover upon the contract as soon as the liability of the assured has become fixed and established by a judgment against him, even though he has sustained no actual pecuniary loss or damage at the time he seeks to recover.

2. Indemnity Insurance—*Automobile Indemnity Policies—Liability of Insurance Company to Party Injured—Liability Becomes Fixed when a Judgment is Obtained Against Assured who is Insolvent—Case at Bar.*—The instant case was an action against an indemnity insurance company by an administrator, who alleged that his decedent lost her life while riding in a car owned by one B., and that in an action for wrongful death against B. the administrator had recovered a judgment; that execution upon this judgment had proved unavailing, as B. was insolvent, and that at the time of the death of decedent defendant had outstanding a liability insurance contract with B. by which it was obligated to pay any judgment recovered against B. by any person injured or killed by reason of the ownership, maintenance and use of B.'s car.

*Held:* That when the liability of the insurance company became re-
duced to the payment of a definite sum, by the recovery of a judg-
ment against B., the obligation of the company under its contract
to pay the judgment became fixed, subject to such defenses as it
might have in an action to enforce compliance with its obligation.

3.  INDEMNITY INSURANCE—*Automobile Indemnity Policies—Liability of In-
surance Company to an Action by Person Injured who has Recovered
Judgment Against the Assured who was Insolvent—Code of 1924,
Section 4326a, and Code of 1919, Section 5143—Case at Bar.*—Acts of
1924, page 504, Code of 1924, section 4326a, provides that indemnity
policies shall contain a provision that in case execution against the
assured is returned unsatisfied in an action brought by an injured
person, because of the insolvency of the insured, then an action
may be maintained by the injured person against the insurance
company for the amount of the judgment against the assured.  The
policy in the instant case, an action by an administrator against an
indemnity company, contained a provision in compliance with the
statute, upon which plaintiff relied as authority for the right to sue
the company.  Even without such a stipulation in a policy, which
nevertheless contains a promise to pay the amount of the judgment,
and is not a mere agreement to indemnify the assured against
pecuniary loss or damage suffered by him, it is clear that in Vir-
ginia the injured person can maintain an action after judgment
directly against the insurance company under section 5143 of the
Code of 1919.

4.  CONTRACTS—*Parties—Right of Action by Beneficiary of Contract—
Section 5143 of the Code of 1919.*—While it is not the purpose of section
5143 of the Code of 1919, enlarging the right of action of beneficiaries
under contracts to which they are not parties, to restrict the powers
of the parties to contract, yet the intention was to extend the remedy
on the contracts mentioned in the section to beneficiaries under the
contracts, where such extension was not forbidden by the terms of
the contract itself.

5.  CONTRACTS—*Parties—Right of Action by Beneficiary of Contract—Con-
struction of Section 5143 of the Code of 1919.*—Section 5143 of the Code
of 1919, enlarging the right of action of beneficiaries under contracts
to which they were not parties, is highly remedial, and should be
liberally construed in order to accomplish the ends manifestly
intended.

6.  INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by In-
jured Party Against the Insurance Company.*—That an injured party,
upon recovering a judgment against the assured in an action on an
indemnity insurance policy, takes a benefit under the insurance
contract cannot be questioned, and therefore where he is unable to
collect a judgment against the insured on account of the insolvency

of insured, he may bring his action directly against the insurance company.

7. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by Injured Party Against the Insurance Company—Defenses—Action is upon the Contract and not upon the Judgment.*—Where an injured party has obtained judgment against the assured on an indemnity policy, which judgment remains unsatisfied because of the insolvency of insured, and the injured party brings his action against the insurance company for the amount of the judgment against assured, the action is plainly upon the insurance contract and not upon the judgment against the assured, and is therefore subject to any proper defense by the company under the terms of the contract. Whether the right of the plaintiff to maintain his action is rested upon Code of 1924, section 4326a, or upon the stipulation in the policy, or upon section 5143 of the Code of 1919, he is seeking only to enforce compliance on the part of the company with the terms of its contract, and therefore the company can make any defense available to it in a suit by the assured.

8. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Breaches of Contract by Assured—Questions of Fact to be Determned by the Jury—Case at Bar.*—In the instant case, an action by an administrator against an indemnity insurance company to recover the amount of a judgment obtained against the assured for the wrongful death of the administrator's intestate, upon the evidence the question of fact for the jury to decide was whether, upon the demand of the plaintiff that the company pay the amount of the judgment, the company had in reply established breaches of the contract with the assured containing the terms of its agreement to pay the judgment, and was thus not bound thereon.

9. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by Injured Party Against Insurance Company—Proof that Car Involved in the Accident was the Car Described in Policy—Case at Bar.*—In the instant case, an action by a party injured against an indemnity insurance company, it was argued that a verdict for plaintiff was not warranted because there was not sufficient proof that the car involved in the accident was the identical car described in the policy. No direct statement of that fact seems to have been made by any witness, but in correspondence put in evidence the company assumed it to be the car described in the policy, and in the examination on both sides this was manifestly regarded as beyond dispute. In letters denying liability the company referred to the particular car covered by the policy as the car involved in the accident.

*Held:* That the evidence amply authorized the jury to find that the car described in the policy was the car involved in the accident.

10. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by In-*

*jured Party Against Insurance Company—Defense that Assured Failed
to Co-Operate with Company and Give it Information as to how Accident
Happened—Case at Bar.*—In the instant case, an action by an administrator against an indemnity insurance company to recover
the amount of a judgment against assured, who was insolvent, for
the death of his intestate, defendant alleged that the assured had
failed to co-operate with it in preparing for the defense, and refused
to give information as to how the accident happened, in violation
of the conditions of the policy. It appeared from the evidence that
assured for a long period after the accident was greatly wrought up
and in a very nervous condition. It appeared that before the
action against assured, but after the insurance company had disclaimed liability, the assured was ready and willing to help the
defense in any way. The jury found that the company was not warranted in taking the position at the time it did that assured had
violated his obligation to co-operate with and assist in preparing
for the defense of the action for damages, and the appellate court
held that the verdict was not against the evidence or without evidence to support it.

11. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Repudiation of
Liability by Company—Waiver of Right to Complain of a Compromise
Verdict Against Assured.*—The instant case was an action by an
administrator against an indemnity company to recover the amount
of a judgment against assured for the wrongful death of his intestate.
The company, before action was brought by the administrator
against the assured, repudiated its contract liability on the ground
that assured had refused to co-operate with it in the defense of the
action and give it the necessary information in regard to the accident.

*Held:* That the company having repudiated its contract liability,
thereby waived its right to complain of a compromise verdict
against assured unless the latter was guilty of fraudulent connivance
in allowing the recovery against him.

12. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by Injured Party Against Assured—Compromise Verdict Against Assured
Alleged to be Collusive—Case at Bar.*—The instant case was an action
by an administrator against an indemnity insurance company to
recover the amount of a judgment recovered against assured, who
was insolvent, for the death of the administrator's intestate. Before
the action against assured the company repudiated its liability under
the insurance contract and took no part in the defense of the action.
There was a compromise verdict and judgment in favor of plaintiff
against assured, and in the present action the company alleged that
there was bad faith and collusion on the part of the assured and the
administrator culminating in the compromise judgment. Both the
administrator and the plaintiff strenuously denied that there was

any collusion, and plaintiff's attorney testified that the amount of the verdict was agreed upon under his advice.

*Held:* That the conclusion of the jury upon this question of fraud and collusion in favor of plaintiff was final.

13. INDEMNITY INSURANCE—*Automobile Indemnity Policies—Action by Injured Party Against Company—Insolvency of Assured—Case at Bar.*— The instant case was an action by an administrator against an indemnity insurance company to recover the amount of a judgment recovered against assured, who was insolvent, for the death of the administrator's intestate. Defendant company asked that a verdict in favor of plaintiff should be set aside because the evidence failed to show that assured was insolvent. The administrator undertook to prove that the assured was insolvent and there was evidence tending to show his insolvency.

*Held:* That the conclusion of the jury that assured was insolvent was final.

14. APPEAL AND ERROR—*Rule 22 of the Supreme Court of Appeals—Objections to Instructions.*—In the instant case plaintiff in error assigned as error the refusal to give certain instructions offered by it. Appended to each of these instructions was the following certificate signed by the judge: "The foregoing instruction requested by the defendant was denied, and the defendant excepted."

*Held:* That under Rule 22 of the Supreme Court of Appeals the appellate court was precluded from passing upon the instructions.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Aiken, Benton & Bustard,* for the plaintiff in error.

*Harris, Harvey & Brown,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

In this case J. A. Covington, administrator of Hettie I. Davis, was awarded a verdict for $4,623.03 against the Indemnity Insurance Company of North America,

upon the trial before a jury, and the trial court having overruled a motion to set aside the verdict and then rendered judgment upon it, the defendant company obtained a writ of error.

The parties will be referred to in the positions occupied by them before the trial court, the administrator being the plaintiff and the indemnity company the defendant.

In the notice of motion for judgment, by which the action was instituted, the administrator alleged that the decedent, Hettie I. Davis, on April 5, 1926, lost her life while riding with Marion M. Barker in an Essex roadster car owned by Barker, and that in an action for wrongful death against Barker he had recovered a judgment on October 7, 1926, for $4,500.00 and costs; that execution upon this judgment had proved unavailing as Barker was insolvent; that at the time of the death of Miss Davis the defendant indemnity company had outstanding its liability insurance contract with Barker by which it was obligated to pay any judgment, not exceeding $5,000.00, recovered against Barker by any person injured or killed by reason of the ownership, maintenance, and use of the Essex roadster by Barker; that under the statute law of Virginia, Barker being insolvent and execution having proved fruitless, a cause of action accrued to the administrator to compel the company to pay to him the amount of the judgment and costs.

The company defended upon the ground that the administrator could claim only through Barker and that Barker had violated the conditions of the policy by failing to co-operate with the company in preparing for a defense of the action for damages against him and by declining to give the company's representative information concerning the circumstances of the acci-

dent, whereupon the company had disclaimed all liability; and further upon the ground that the judgment against Barker was not the result of a trial in fact, but was the result of an agreed verdict, wherein Barker had colluded with the plaintiff to obtain judgment against him, and that the judgment was voluntarily assumed, incurred and allowed by Barker, without the written consent of the company, in violation of the terms of the policy.

[1] The first assignment of error is to the ruling of the court refusing to set aside the verdict. The consideration of this question renders essential an understanding of the principles of law applicable to a case of this character. Cases arising under automobile indemnity or liability policies have, in the past several years, been before the courts with increasing frequency, and while there is lack of harmony in the decisions in some respects, the general rules of law are fairly well settled. The policy in the instant case is clearly an insurance contract to indemnify the assured against liability arising out of claims for damages against him and not merely an agreement to indemnify him against loss sustained and actually paid by him. The company was bound by the terms of the policy to indemnify the assured by *paying* any loss sustained by him "by reason of the liability imposed by law" in case of injury to or the death of third persons, and to pay as well the court costs in any suit against the assured as also the interest upon any judgment in the suit. The policy also contains the usual stipulation that it will defend "in the name of and on behalf of the assured all claims or suits for such damage for which the assured is, or is alleged to be, liable." Under such a policy the cause of action of the assured is complete and the assured can recover upon the contract as soon as the liability of the assured

has become fixed and established by a judgment against him, even though he has sustained no actual pecuniary loss or damage at the time he seeks to recover. 31 Corpus Juris 438.

[2] The policy in the instant case is similar to the policy construed by the court in *Fentress* v. *Rutledge*, 140 Va. 685, 125 S. E. 668, in which it was held that the company was liable, upon garnishee process, to the party injured who has secured a judgment against the assured. *Combs* v. *Hunt*, 140 Va. 627, 125 S. E. 661, 37 A. L. R. 621, presents an instance of a policy by the terms of which the company bound itself only to indemnify the insured for actual loss and was under no obligation further than to reimburse the assured after he had himself paid a judgment against him. *Combs* v. *Hunt* is reported and annotated in 37 A. L. R. 621, and a more recent annotation may be found in 41 A. L. R. 526. In the instant case, when the liability of the company became reduced to the payment of a definite sum, by the recovery of the judgment against Barker, the obligation of the company under its contract to pay the judgment became fixed, subject to such defenses as it might have in an action to enforce compliance with its obligation. Quite recent cases are *Barney* v. *Preferred Automobile Ins., etc., Co.* (Mich.), 215 N. W. 372; *Landaker* v. *Anderson*, 145 Wash. 660, 261 Pac. 388.

[3] By a statute passed by the Virginia legislature in 1924 (Acts 1924, page 504), it is enacted that:

"No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, * * * * shall be issued or delivered (to any person) in this State by any corporation or other insurer * * * * unless there shall be

contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injuries sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, (that) then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in said action, not exceeding the amount of the policy."

The policy here contained a provision inserted in compliance with this statute. The plaintiff relied upon this statutory and policy provision as authority for his right to sue the company. Even without such a stipulation in a policy, which nevertheless contains a promise to pay the amount of the judgment, and is not a mere agreement to indemnify the assured against pecuniary loss or damage suffered by him, it is clear that in Virginia the injured person can maintain an action after judgment directly against the insurance company under the comprehensive statute relative to contracts made in whole or in part for the benefit of persons not parties to the contract, contained in section 5143 of the Code of 1919. The agreement of the company is to pay the loss "imposed by law," which is represented by the judgment. The injured person is the only one to whom this payment should be made, and the policy further stipulates in terms that the company will pay "all interest accuring upon any judgment in any such suit up to the date of the payment or tender to the judgment creditor, or his attorney of

record, of the amount for which the company is liable,"
thereby evincing the intention of the parties that the
company should pay or tender payment of the judg-
ment directly to the injured party or his attorney.
The obligation or promise to pay the judgment neces-
sarily inures to the benefit of the judgment creditor, the
injured party. Indeed there is a direct promise to pay
the judgment to the injured party or his attorney.

[4] In *Montague Manufacturing Co.* v. *Homes Cor-
poration*, 142 Va. 301, 128 S. E. 447, the court held
that section 5143 of the Code had greatly enlarged the
right of action of beneficiaries under contracts to which
they were not parties, and while it was not the purpose
of the statute to restrict the powers of the parties to
contract, yet the intention was to extend the remedy
on the contracts mentioned in the section to benefi-
ciaries under the contracts, where such extension was
not forbidden by the terms of the contract itself.

[5, 6] It is further there held that "the statute is
highly remedial, and should be liberally construed in
order to accomplish the ends manifestly intended."
See also *Smokeless Fuel Co.* v. *C. & O. Ry. Co.*, 142 Va.
355, 128 S. E. 624; *Aetna Company* v. *Earle-Lansdell
Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235; *Fidelity &
Deposit Company of Md.* v. *Mason*, 145 Va. 138, 133
S. E. 793; Burks' Pl. & Prac. (2nd ed.) 36–37. That
the injured party, upon recovering a judgment against
the assured, takes a benefit under the insurance con-
tract is no more open to question in this case than
under the engagement of the party undertaking to
pay the unnamed creditors of the other party to the
contract which was under review in *Montague Manu-
facturing Co.* v. *Homes Corporation, supra.*

[7] It is insisted, however, by the plaintiff that his
action was upon a judgment and therefore not subject

to the defenses made by the defendant insurance company. This theory of the plaintiff was properly rejected by the trial court. The plaintiff administrator was not in the instant case relying upon the judgment as the ground for his right of recovery. On the contrary, in his notice of motion he places his cause of action upon the refusal of the company to comply with its contract to pay the amount of the judgment. The action is plainly *upon the contract* and is, therefore, subject to any proper defense by the company under the terms of its contract. Whether the right of the administrator in the instant case to maintain this proceeding as plaintiff be rested upon the above statute, or upon the stipulation in the policy, or upon the provisions of section 5143 of the Code, he is seeking only to enforce compliance on the part of the company with the terms of its contract, and the issue between the parties is the same as it was upon the garnishee proceeding in *Fentress* v. *Rutledge, supra,* and, therefore, the company could make any defense available to it in a suit by the assured.

[8] Upon the evidence the question of fact for the jury to decide was whether, upon the demand of the plaintiff that the company pay the amount of the judgment, the company had in reply established breaches of the contract with the assured containing the terms of its agreement to pay the judgment, and was thus not bound thereon.

[9] In the petition for writ of error it is argued that the verdict is not warranted by the evidence for three reasons. It is insisted in the first place that there is not sufficient proof that the car involved in the accident was the identical Essex roadster described in the policy. No direct statement of that fact seems to have been made by any witness, but in correspondence put in.

evidence the company assumed it to be true, and in the examination on both sides, it is manifestly regarded as beyond dispute. In the letter written by the company denying liability the company refers to the particular car covered by the policy as the car involved in the accident, and places its denial of liability on the "failure of co-operation" on the part of the assured. The evidence contained ample authority for the jury to find that the car described in the policy was the car the management of which caused the death of the decedent.

[10] In the next place it is insisted in the petition that the assured failed "to co-operate with this company, and refused to give it information as to how the accident happened, plainly in violation of the conditions of the policy, thereby putting the company in such a position that it could not know how to defend suit, or whether it would be advisable to stand trial or try to settle the claim out of court." The accident occurred on April 5, 1926. On the next day the Danville agents of the company addressed a letter to the home office of the company in Philadelphia to the following effect:

"Gentlemen:

"Re: Policy CA 123460, M. M. Barker.

"In reference to the above assured, we are enclosing herewith account of an accident of Mr. Barker's in which a young lady was instantly killed. The account is self explanatory.

"We do not think there is any chance of a suit *of* even a contention to claim any damages from Mr. Barker. We, however, thought it best to report the accident to you promptly."

The newspaper clipping enclosed in the letter covers two pages of the printed record, and contains quite a

detailed account of the accident, and those concerned in it. Mr. Benton, the Danville attorney for the company, saw Barker twice within the next thirty days or more and says he could not get him to give a statement with a full account of the circumstances of the accident, and that he also telephoned to his house without being able to get in touch with him. Barker testified that he was confined to the house about two weeks after the accident, and it was evident from the testimony of Mr. Benton, and Yarbrough a friend of Barker's, that the latter was very nervous, and "shakey" for some time after the accident. Barker's testimony was to the effect that he had not intended to disregard any of his duties under the policy and was willing to do what was required of him. He says Mr. Benton came to see him while he was at work on a building on Howeland Circle and testified as follows:

"Q. Tell us what happened?

"A. He come out there and said he wanted to see Mr. Barker and I told him I was the man, and I went down to see him—I was on top of the house, and he told me he represented the insurance company, I think, and he asked me about a statement, and of course I didn't know exactly what to say to him. He said to make a report like it was in the newspaper. He wanted to know if I would sign a statement to that effect. I told him I didn't know whether I would or not.

"Q. He asked you if that report in the newspaper was about right and you told him it was just about as right as you could give it?

"A. Yes, sir.

"Q. Did you refuse to give him any information that you could give him?

"A. No, sir; that was all that was asked for by him or anybody else.

"Q. Did he ever ask you as to who were any witnesses to it, or ask you to go out there and help him investigate?

"A. No, sir.

"Q. When the suit was brought against you you went with Mr. Yarbrough down to his office again?

"A. That was the first time.

"Q. Were you willing and ready to help him in any way that you could?

"A. Yes, sir; I have been all the time."

On cross examination he stated that he had been advised by some of his friends not "to sign anything or to tell anything." Exactly what was meant by this does not further appear. From the testimony of Mr. Benton, of Yarbrough, and of Barker the jury might justly have inferred that Barker was, for a long period after the accident, greatly wrought up and in a very nervous and indecisive condition. Barker appears to have been a rather illiterate and ignorant man, timid and cautious. It may be, as suggested by the defendant, that he was fearful of being arrested on account of the accident; and for that reason was unduly frightened.

On July 27, 1926, the company addressed to Barker, from the Philadelphia office, the following letter:

"You hold with the Indemnity Insurance Company of North America, an automobile policy No. CA-123460. An accident occurred at Stoney Mills, near Danville, on or about April 5th involving the death of Miss Hettie Davis. In connection with this death, arising out of the operation of your Essex car, covered under the above policy, you failed to co-operate with us in the investigation of the accident. Your policy, among other things, specifically provides that the assured shall

at all times render to the company all co-operation in his power and whenever requested shall aid in securing information and evidence. We, therefore, disclaim any and all liability under your policy for the above accident.

"Yours very truly."

The provision of the policy upon which this denial of liability is based is as follows:

"The assured shall at all times render to the company all co-operation and assistance in his power and, whenever requested, shall aid in securing information and evidence and the attendance of witnesses and in prosecuting appeals. The assured shall make no settlement of any claim arising hereunder nor incur any expense other than for immediate surgical relief without the written consent of the company. The company shall have the right to settle any claim or suit at its own cost."

The notice of the motion for judgment in the suit by the administrator was served on Barker August 12, 1926, and was returned to October 7th following. Thereupon Barker signed and mailed the following letter under date of August 23rd, the letter having been written for him by Yarbrough, and a copy being at the same time sent to the Danville agents of the company:

"Indemnity Insurance Co., of North America,
        "Philadelphia.

"Gentlemen: This is to inform you that I have received notice of a suit having been filed against me on account of a fatal accident which occurred with my car covered by your policy No. CA 123460 dated February 12, 1926, for the term of one year. You will

do what you deem necessary to protect your interest in the case."

To this the company replied under date of September 4th:

"In view of the fact that we disclaimed in the form of a letter sent to you under date of July 27th, there is nothing for you to do but obtain the services of an attorney to give you the proper defense at your own expense. As stated to you under date of July 27th, we will not be responsible for any defense costs, or any verdict. We have closed out our records."

Both Yarbrough and Barker testify that about the same time they went to Mr. Benton's office for the purpose of having him defend the suit and that Barker was ready and willing to help the defense in any way he could. Mr. Benton testified that when they came to see him he told them the company had disclaimed liability and was not further interested, and didn't have anything further to do with the matter.

Barker then employed counsel to represent him and upon the trial of the case Mr. Harry Wooding, the attorney for Benton, agreed upon a settlement of the case for $4,500.00, and a verdict was accordingly rendered by the jury for that amount.

[11] Upon principles too well established to need citation of authority, it is manifest that, after having repudiated its contract liability in its letter of July 27th, the company waived any right to complain of the compromise verdict against Barker unless the latter was guilty of fraudulent connivance in allowing the recovery against him. If the company acted too hastily in so denying its liability, it was not justified in refusing to comply with its duty to defend the damage suit against Barker. The jury found that the company was not warranted in taking the position at

the time it did that Barker had violated his obligation to co-operate with it and assist in preparing for the defense of the action for damages which might be instituted. Viewing the evidence as upon a demurrer to it, as we must in considering on appeal this motion for a new trial, we cannot hold that the verdict was against the evidence or without evidence in respect to the particular matter just dealt with. *Pigg* v. *International Indemnity Co.* (Cal. App.) 261 Pac. 486.

[12, 13] It is further argued for the company that the verdict should not be allowed to stand because the evidence plainly shows that there was bad faith and collusion on the part of Barker and the administrator in agreeing upon the recovery of the judgment for $4,500.00; and also because the evidence fails to show that Barker was insolvent. Covington, the administrator, and Barker both strenously denied that there was any collusion between them, and Barker's attorney testified that the amount of the verdict was agreed upon under his advice as a wise course for his client to pursue. There was likewise evidence tending to show that Barker was insolvent, the administrator having undertaken to prove that fact. On both these matters the conclusion of the jury was final.

We find no error in the action of the trial court overruling the motion to set aside the verdict.

[14] The company assigns as error the refusal of the court to give certain instructions offered by it numbered 4, 5, 6, 7 and 8. Appended to each one of these instructions is the following certificate signed by the judge, viz.:

"The foregoing instruction requested by the defendant was denied, and the defendant excepted."

Under Rule 22 of the court we are precluded from passing upon these instructions, as was held in *Kelly*

v. *Schneller*, 148 Va. 573, 139 S. E. 275; *Hawse* v. *Bryan*, 148 Va. 194, 138 S. E. 721; and *Myers* v. *Bibee Grocery Co.*, 148 Va. 282, 138 S. E. 570.

Five instructions were, however, given to the jury fairly covering the law applicable to the issues raised by the evidence, and sufficiently embracing the material matters in the instructions refused.

A further assignment of error is based upon the granting of two instructions designated as "B" and "C." We perceive nothing in these instructions of which the defendant can complain. Considering the instructions as a whole they submitted very fully and fairly the defenses made by the company, and there is nothing in them prejudicial to the defendant.

On the whole case we are of opinion that the plaintiff in error has not shown any error on the part of the trial court authorizing a reversal of the judgment complained of. The judgment is therefore affirmed.

*Affirmed.*