# Richmond

## CALDON H. DIXON v. NORFOLK SHIPBUILDING AND DRY DOCK CORPORATION.

January 24, 1944.

Record No. 2773.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Thomas J. Surface* and *George W. Chaney*, for the appellant.

*Fred B. Gentry*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Caldon H. Dixon, appellant, filed his petition for compensation with the Industrial Commission, seeking an award for compensation for injuries suffered while in the employ of appellee.

Th petition alleges that on January 27, 1943, Dixon, in the course of his employment, suffered an accident which resulted in double hernia. His average weekly wage was $24.00.

On May 20, 1943, a decision was rendered by the hearing commissioner, denying appellant relief on the ground that the evidence failed to show that he received an injury arising out of and in the course of his employment on January 27, 1943, and on the further ground that the medical evidence adduced "would indicate that he was a sufferer from hernia prior to January 27, 1943." On July 16, 1943, the full commission adopted the conclusions of the hearing commissioner and by order dismissed appellant's petition. From this order an appeal has been allowed.

The determinative question is whether or not the award of the commission is supported by the evidence.

Section 2(e) of the Workmen's Compensation Law—Michie's Code 1942, sec. 1887(2), (e)—provides that it is essential, in support of an award for hernia, that claimant show that there was an injury resulting in hernia; that the

hernia appeared suddenly; that it was accompanied by pain; and that the hernia did not exist prior to the alleged accident.

In *Big Jack Overall Co. v. Bray,* 161 Va. 446, 171 S. E. 686, Mr. Justice Hudgins defined an accident thus:

"The definition of accident generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens. Where the effect was not the natural and probable consequence of the means employed, and was not intended or designed, the injury resulting was produced by accidental means."

In *Hall's Bakery v. Kendrick,* 176 Va. 346, 11 S. E. (2d), 582, this language is approved:

"In the case of *Indian Creek Coal & Mining Co. v. Calvert,* 68 Ind. App. 474, 119 N. E. 519 (524), 120 N. E. 709: 'It is no longer required that the causes external to the plaintiff himself which contribute to bring about the injury shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected, and so, if received on a single occasion, occurs "by accident," is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.'"

This court has frequently stated the rule that the Compensation Act should be liberally construed in harmony with the humane purpose of the act.

The contention of appellee is that there is a conflict in the evidence, which has been resolved in favor of the appellee. We are not in accord with this contention, for the reason that, in our opinion, the record does not disclose a conflict in the evidence.

The evidence shows that appellant, prior to his employment by appellee, was for many years a barber with a shop in the city of Roanoke; that he was unaccustomed to performing manual labor; that on the day of the accident he

was classified as a machinist and put on bench work; that it became necessary to move a work bench which weighed between four and five hundred pounds and upon which were a number of metal vises; that he was called upon by his superior, H. G. Baily, to assist him in moving the bench; that he picked up his end of the bench and lifted it eight or ten inches off of the floor; that in an attempt to swing the bench into position, his hand slipped on grease underneath the bench and in an effort to regain his hold on the bench, he felt a sharp pain in his side; that he released his hold on the bench and "grabbed his stomach;" that he felt like "everything had dropped out;" that he thought the muscles in his side were sprained and did not notify Baily of his injury until the following day.

W. R. Dobbs, an employee at the time of the accident, testified that he was standing at the elevator which was approximately fifty feet from the bench; that he saw appellant lift his end of the table eight or ten inches from the cement floor; that he saw him falling and saw him grab his stomach; that he went to him and asked if he was hurt and if he wanted to go home; that appellant said he thought he would be all right; that again that night he enquired how he was feeling.

In response to categorical questions, appellant further stated that he did not have hernia prior to the accident; that his general health was good, otherwise he would not have taken a hard job; that since his accident he was unable to perform any manual service.

Dr. B. C. Moomaw testified, in substance, that on January 29, 1943, appellant came to his office and informed him that on January 27, 1943, he lifted a heavy work bench and strained his abdominal muscles and the muscles of his back and thigh and suffered acute pains on both sides of his lower abdomen; that he examined appellant and found a definite hernia on the right side and an enlarged ring and some partial bulging and beginning hernia on the left side; that, while it was possible to operate, he doubted the wisdom of doing so, due to appellant's physical condition. Dr.

Moomaw further stated that he had been appellant's physician for a number of years; that in July, 1942, he treated him for bronchial asthma; that appellant had never complained of having hernia during the time he had treated him; that he was of opinion that the hernia did not exist prior to the accident; and, in response to the question, "You feel it was a sudden hernia?" he replied, "Yes sir, that is my opinion; it was sudden."

While it is true that Dr. K. D. Graves filed a statement showing that as a result of his examination of appellant subsequent to the accident, he found that he had a weak heart, bronchial asthma, and inguinal hernias and was markedly obese, this report does not throw any light upon the accident.

The only evidence produced by appellee in contravention of that produced by appellant is the negative testimony of H. G. Baily. Baily stated that he did not see appellant slip or fall, grab his stomach, or anything unusual happen to him; that he did not see any grease on the bench; that he did not see appellant lift the table. It was significant, however, that in response to the question, "Did he lift it?" he replied, "It would slip on the floor—we got a piece of metal wider than the leg." Not once did Baily make the positive statement that appellant did not lift his end of the bench.

The only basis for the conclusion that the medical evidence would indicate that he (appellant) was a sufferer from hernia prior to January, 1943, is the statement of Dr. Paul Davis. In reply to the question, on cross-examination, "Was the general picture you got of this claimant that, prior to January 27, 1943, he had relaxed rings?" Dr. Davis answered, "I would think so." That is the sum total of the evidence that appellant had anything the matter with him indicating a hernia prior to the accident. Even though we concede that appellant had relaxed rings prior to the accident, the evidence is conclusive that the hernia was caused by the exertion of pushing or lifting the bench at the direction of his superior.

The order of the Industrial Commission will be reversed and the case remanded with direction to allow appellant the proper amount of compensation, together with attorney's fees incurred in this litigation.

*Reversed and remanded.*