Grafton, Feb. 3, 1948. } No. 3699.

HARTFORD ACCIDENT & INDEMNITY COMPANY

*v.*

ROGER WOLBARST & a.

*Devine & Millimet (Mr. Millimet* orally), for the plaintiff.

*Nighswander & Lord (Mr. Nighswander* orally), for the defendant Wolbarst.

JOHNSTON, J. It is unnecessary to decide in which state, Vermont or New Hampshire, the policy should be deemed to have been delivered. It contained the following provision: "Such insurance as is afforded by this 'policy for bodily injury liability or property damage liability shall comply with the provisions of the Motor Vehicle Financial Responsibility Law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period

. . . ." The effect of this provision is that the policy issued to Mr. Reynolds conforms to the provisions of the New Hampshire Motor Vehicle Financial Responsibility Act, since the collision occurred in this state. *Lumbermens Casualty Company v. Blake,* 94 N. H. 141, 145. That statute is chapter 122 of the Revised Laws.

To comply with this act, a policy is required to indemnify the insured "against loss by reason of the liability to pay damages to others for damage to property, except property of others in charge of the insured or his employees, or bodily injuries, including death at any time resulting therefrom, accidentally sustained during the term of said policy." R. L., c. 122, s. 1, *par.* VII. The claim of the petitioner is that the injuries and the damage in the present case were not "accidentally sustained" by the defendants because the collision was intended. It should be observed that the phrase "liability to pay damages" is not limited to any special tort.

The term "accident" is not confined to a single meaning. "The word 'accident' is susceptible of and has received many definitions, varying with the connection in which it is used." *Chapin v. Corporation,* 96 Neb. 213, 217. It may mean a happening with no one at fault; one in which the injury or damage is intended as in some workmen's compensation cases (*Newell v. Moreau,* 94 N. H. 439); one in which the collision is intended but nothing subsequent thereto (*Sheehan v. Goriansky,* 321 Mass. 200); or one in which the proximate cause of the collision is intended but nothing thereafter as in cases of excessive speed, passing through a red light, etc. It may also apply to cases of simple negligence, gross negligence, wanton or wilful conduct.

The meaning expressly or impliedly given to the word in private policies or contracts independently of statutory requirements is not controlling. The point of view is different. Apart from statutory obligations and questions of public policy, insurers may sell such coverage as they wish. It may be common as in *Newell v. Insurance Company,* 94 N. H. 26, which involved a contract of life insurance, to exclude from coverage casualties in which "death results, directly or indirectly, or wholly or partially, . . . . from injuries intentionally inflicted on the Insured by any person."

The point decisive of the present petition is the meaning to be given the statutory phrase, "accidentally sustained." "It must be noted that the terms and conditions of *sec.* 85.93, Stats., are a part of the insurance policy with like force and effect as though printed in the policy, and this is true whether the policy be considered an indem-

nity policy or a liability policy." *Kujawa* v. *American Indemnity Company*, 245 Wis. 361, 366.

One of the definitions given the word "accident" in Funk & Wagnalls, New Standard Dictionary is: "1. Anything that happens; an occurrence: event. Especially: . . . (2) Any unpleasant or unfortunate occurrence that causes injury, loss, suffering or death."

The purpose of the New Hampshire Financial Responsibility Act was fundamentally to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles. *Opinion of the Justices*, 81 N. H. 566. "Financial responsibility statutes have been passed in many states, and are in the process of preparation in still others, to secure the solvency of operators upon the highways of those states, and to guarantee their ability to discharge judgments arising out of accidents in which they might be involved. . . . The beneficiaries of such an act and of such a policy, when issued, are the members of the general public who may be injured in automobile accidents by such person; and the policies are generally construed with great liberality to accomplish their purpose." 7 Appleman, Insurance Law and Practice 62, 63. This purpose of the statute is best served by construing the phrase "accidentally sustained" to include any unfortunate occurrence causing injury or damage. Regardless of the mental state of the insured that precedes the injury or the damage suffered by the traveler, the suffering or the loss is the same. Neither injury nor damage is mitigated by the fact that there was intent at any stage of the occurrence.

Some indication that the Legislature intended that the act should be construed favorably to the one injured is given in the use of the word "sustained." "Accidentally" is to be looked at from the point of view of the one sustaining the injury or loss rather than from that of the one causing them. On the record before us, it could hardly be said that they were intentionally sustained even if the collision was intentionally caused. "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes." Opinion of *Cardozo*, J. in *Messersmith* v. *American Fidelity Company*, 232 N. Y. 161, 165.

The word "accident" in all parts of chapter 122 and of related statutes is to be given the same meaning if possible. Said chapter used the term in section 5 and elsewhere regardless of any element of faulty conduct. "The test of an accident without regard to fault or a charge of fault as the occasion for giving the law operative effect is in some aspects an arbitrary one. It discriminates among innocent

persons, between those escaping and those not escaping accident. A car owner or operator fortunate enough not to be struck by a negligent driver need not, while one who in spite of all possible care does not escape must, furnish security. Proper operation is immaterial and innocent misfortune is penalized. To use an appropriate expression, insult is added to injury." *Rosenblum* v. *Griffin*, 89 N. H. 314, 316. In the same opinion it is said concerning what is now section 19 of chapter 118 of the Revised Laws, which section requires the reports referred to in said section 5, it "has always been understood to apply to operators meeting with accident, regardless of their fault." *Id.*, 317. While the court in these quotations emphasized that the requirements applied to one without fault, what was said also included within its meaning operators regardless of the nature of their fault. It would be unreasonable to hold that the word "accident" was so used by the Legislature that, while an innocent person was subject to furnishing proofs of financial responsibility, one intentionally causing injuries or damage was not so subject.

Accordingly, the result is reached that the Legislature intended that there should be coverage upon the present facts. The conclusion is the same that the Supreme Court of Massachusetts expressed with respect to its compulsory insurance law in *Wheeler* v. *O'Connell*, 297 Mass. 549. It is true that the New Hampshire Act does not require insurance on the part of all operators; but there is no reason to think that the insurance that is furnished in compliance with it is not as favorable to highway travelers. The Massachusetts statute provided for indemnity against loss by reason of liability to pay damages "arising out of the ownership, operation, maintenance, control or use upon the ways of the commonwealth of such motor vehicle." Mass. G. L. (Ter. *ed.*) *c.* 90, *s.* 34A. It does not have the phrase "accidentally sustained." Yet, the Legislature of that state had in mind that the liability would arise out of an accident for limits to the indemnity are placed "on account of any one accident."

The rights of the injured party are not simply derivative from those of the insured. They are to some extent independent of those rights and are gained from the statute. This was recognized in the first enactment of the law. Laws 1927, *c.* 54, *s.* 6. To a greater extent is this true under the present statute. *Phoenix Indemnity Company* v. *Conwell*, 94 N. H. 146, held that rights under the minimum limits of liability required under the provisions of paragraph VII of section 1 of chapter 122 become absolute upon the occurrence of an accident and cannot be defeated by any terms of the policy.

Nor is the protection given by the Financial Responsibility Act against public policy in the case of injuries intentionally inflicted. The Act itself is declaratory of public policy and supersedes any rule of public policy applicable to ordinary insurance law. In the paragraph relating to financial responsibility laws, the policy states: "The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." If further provisions are desired in the insurance contract to provide for reimbursement from an insured that intentionally injures another, they may be included. It should be as easy for an insurance company to collect as for an injured party.

*Judgment for the defendants.*

All concurred.