**FARM BUREAU MUT. AUTOMOBILE INS. CO. v. HAMMER et al:**

**No. 5887.**

United States Court of Appeals Fourth Circuit.

Argued June 17, 1949.

Decided Oct. 3, 1949.

Robert Lewis Young, Richmond, Va., and Wayt B. Timberlake, Jr., Stanton, Va. (John G. May, Jr., Richmond, Va., on the brief), for appellant.

H. G. Muntzing, Moorefield, W. Va., and Glenn W. Ruebush, Harrisonburg, Va. (Seybert Beverage, Monterey, Va., and Paul J. Hartman, Wake Forest, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and CHESNUT, District Judge.

SOPER, Circuit Judge. •

Farm Bureau Mutual Automobile Insurance Company seeks a declaratory judgment that a policy of automobile insurance issued by it to Marvin L. Wagner does not cover the damages suffered by five persons who were killed or injured on April 19, 1947 in a collision between Wagner's automobile truck and a passenger automobile in which they were riding, because Wagner intentionally caused the collision. The complaint shows, and it is not denied, that Wagner was subsequently convicted of murder in the second degree in the Circuit Court of Highland County, Virginia, and sentenced. to ten years in the penitentiary for intentionally and maliciously causing the death of one of the five persons by intentionally driving his truck into the automobile of which the deceased was an occupant. The defendants in the instant case are a committee appointed by the State Court for Wagner, the personal representatives of the persons who were killed, and two persons who were injured in the collision. They defend on the ground that they are not bound by the conviction of Wagner in the criminal case, and they show that after that event it was adjudged in civil suits brought by them against Wagner in the State Court that the injuries were accidental; and they contend that the Insurance Company is therefore obligated within the limits of liability specified in its policy to pay the judgments recovered against Wagner in the aggregate sum of $43,000 which were returned unsatisfied.[1]

The defendants filed a motion for summary judgment supported by affidavits which showed that the civil suits were brought and tried upon the theory of negligent injury, and that Wagner made no defense thereto; and that after the convic-

---

1. The Committee for Wagner, doubtless appointed on account of his imprison-  ment, took no part in defense of the suit.

tion in the criminal case and before the trial of the civil actions the attorney for the Insurance Company, who had previously entered his appearance for Wagner therein, withdrew with leave of court. The motion for summary judgment was granted by the District Judge and the Insurance Company's complaint was dismissed. He was of the opinion that since the Insurance Company had notice of the civil suits, it was bound to defend them under the provisions of the policy; and that as an insurer with such notice, it was bound by the finding in the civil suits that the injuries and deaths were due to the negligence of Wagner. He therefore held that the defendants should not be restrained from suing the Insurance Company under Section 4326a of the Virginia Code, entitled "Third person injured by a party carrying indemnity insurance subrogated to rights of such party", which provides that in case execution against the insured is returned unsatisfied in an action brought by the injured person or his personal representatives in case of death, then an action may be maintained by the injured person or his personal representatives against the Insurance Company for the amount of the judgment.

We are constrained to the view, notwithstanding certain decisions which support the position of the District Judge, that his judgment should not be sustained under the circumstances of this case. There can be no doubt that the policy in suit could not legally cover and was not intended to cover such conduct as Wagner was guilty of, or to indemnify him for the consequences of his crime. Not only is it contrary to public policy to permit an insured to profit by his own wrongdoing or to encourage the commission of unlawful acts by relieving the wrongdoer of financial responsibility therefor,[2] but the policy issued to Wagner specifically excludes from its coverage the unlawful act which he performed. Under Coverage F of the policy with respect to "Bodily Injury Liability" the company agreed "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile." This provision, however, is qualified by a later paragraph which excluded intentional injury by the insured from the coverage of the policy. It is entitled "Assault and Battery" and reads "Assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

The answer of the defendants does not controvert the allegations of the complaint that Wagner was convicted of a serious crime which included assault and battery, in that he intentionally drove his truck into the automobile; and it is clear that wilfully driving one's car into another constitutes assault and battery upon the other's occupants. Indeed it has been so decided in Virginia where the collision under consideration took place. In Davis v. Commonwealth, 150 Va. 611, 143 S.E. 641, it was alleged that an assault was committed by driving an automobile into another automobile and injuring its occupants. In the course of the opinion the court said, 150 Va. at pages 617, 618, 143 S.E. at page 643:

"The burden was on the commonwealth to prove that the accused, in fact, intended to do bodily harm to another, or that he drove his car in a manner which showed a reckless and wanton disregard for human life and safety, and thereby caused the injury to one or more persons in the Jones car. * * *

2. Sheehan v. Goriansky, 321 Mass. 200, 72 N.E.2d 538, 173 A.L.R. 497; Langford Elec. Co. v. Employers Mutual Indemnity Corp., 210 Minn. 289, 297 N.W. 843; Rothman v. Metropolitan Cas. Ins. Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169; Hill v. Standard Mut. Cas. Co., 7 Cir., 110 F.2d 1001; 5 Am. Jur., Automobiles, § 518; 45 C.J.S. Insurance, § 829, page 887; Notes, 111 A.L.R. 1043, 117 A.L.R. 1175.

"While mere negligence in the operation of an automobile will not support a conviction of the driver for assault and battery, it was for the jury to say whether, under the facts and circumtances disclosed by the evidence, the injury to Jones and others in his car was occasioned by petitioner's reckless and wanton disregard for the lives and safety of other people. If the act was so done, the law imputed to petitioner an intention to do bodily harm, and he was guilty of assault and battery. * * *

" '1. Assault and battery may be committed by striking another with an automobile intentionally, or by driving the machine so recklessly as to justify a jury in finding that there was a reckless disregard of human life and safety.' " See also, 5 Am. Jur., Automobiles, §§ 763, 764; State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 27 A.L.R. 1180; Restatement of Torts, § 13.

■ These considerations completely dispose of one of the main lines of argument presented by the defense, namely, that even though the insured deliberately drove his truck into the car, the resulting injuries were "caused by accident" within the meaning of the policy. It is said that the test of what is an accident in such event should be determined not from the standpoint of the insured but from the standpoint of the injured parties; and it is pointed out that the term "accident" has been interpreted from this aspect in situations in which the injury was caused by the intentional act of some one other than the insured, and also in cases upon life or accident policies in which the injured party is the insured, or where the insurance policy is issued under a workmen's compensation or compulsory insurance law.[3] It is obvious, however, that this rule may not be applied to a policy like that in suit in which intentional injuries by the insured are expressly excluded from the coverage.

The Virginia Motor Vehicle Safety Responsibility Act, Virginia Code 1948 Cumulative Supplement, §§ 2154(a1)–2154(a99) on which the appellees also rely, does not require a different conclusion. They contend that this statute was passed to afford redress for persons injured by the operation of motor vehicles, rather than to furnish indemnity to the owners thereof, and hence the phrase "caused by accident" in the statute and in policies issued under it should be construed from the standpoint of the injured parties as in the cases last cited; and they point out that this interpretation has been given and the injured party has been allowed to recover from the insurer for intentional injuries inflicted by the insured in Massachusetts and in New Hampshire under somewhat but not wholly similar acts. Wheeler v. O'Connell, 297 Mass. 549, 9 N.E.2d 544, 111 A.L.R. 1038; Hartford Accident & Indemnity Co. v. Wolbarst, 95 N.H. 40, 57 A.2d 151.

The flaw in the argument is that the rulings referred to apply to policies issued under the requirements of motor vehicle financial responsibility statutes, and not to policies voluntarily procured as in the case at bar. The policy in this suit is so framed that it can be used under such a statute for it provides that the insurance afforded by the policy shall comply with the provisions of any motor vehicle financial responsibility law which shall be applicable with respect to any liability arising from the ownership or use of the insured vehicle. This form of policy is obviously designed to enable the holder to meet the requirements of such a statute if he becomes subject thereto. The crucial question, therefore, is the applicability of the Virginia statute to the pending case.

The statute provides that the Commissioner of the Division of Motor Vehicles of the state shall revoke or suspend the license of any person upon receipt of the record of his conviction of certain offenses,

---

3. See Huntington Cab Co. v. American Fidelity & Cas. Co., 4 Cir., 155 F.2d 117; New Amsterdam Cas. Co. v. Jones, 6 Cir., 135 F.2d 191; Dixon v. Norfolk etc. Corp., 182 Va. 185, 28 S.E.2d 617; Big Jack Overall Co. v. Bray, 161 Va. 446, 171 S.E. 686, 688; Darby v. Swift & Co., 188 Va. 336, 49 S.E.2d 417; Wheeler v. O'Connell, 297 Mass. 549, 9 N.E.2d 544, 111 A.L.R. 1038.

including reckless driving, and also provides for the suspension or revocation of licenses and registration certificates and plates in certain contingencies, including the operation of a motor vehcile so as to cause an accident resulting in death or personal injury. Section 2154(a16)–(a19). The Commissioner is required to suspend the license and registration of any person who fails to satisfy any judgment for damages for bodily injury or death arising from the operation of the motor vehicle. Section 2154(a24)–(a31). The Commissioner may refuse to issue to any person whose license has been suspended or revoked any new license or register any motor vehicle in the name of such person when he deems it necessary for the safety of the public, and before granting a license or registration to any person whose license or registration has been suspended or revoked, the Commissioner must require proof of his financial responsibility in the future as provided in the Act. Section 2154(a20)–(a23). It is specifically provided that within ninety days after the report of an accident resulting in bodily injury or death, the Commissioner shall suspend the license and registration of the person operating the car involved in the accident until he furnishes security to satisfy any judgment for the damages incurred, and unless the person furnishes and thereafter maintains proof of financial responsibility in the future; but it is stated that these provisions shall not apply to an owner or operator if the owner had in effect at the time of the accident with respect to the motor vehicle involved a standard provisions automobile liability policy in certain specified sums, approved by the State Corporation Commission, and issued by an insurance carrier authorized to do business in the state. Section 2154(a32) and (a33).

The meaning of "proof of financial responsibility" is defined as ability to respond in damages for liability thereafter incurred arising out of the operation of the vehicle in certain specified amounts, and this proof, when required, may be given amongst other ways by proof that a policy of motor vehicle liability insurance has been obtained and is in full force and effect. Such proof may be made by filing with the Commissioner the written certificate of any insurance carrier authorized to do business in the state certifying that there is in effect a motor vehicle liability policy for the benefit of any person required to furnish proof of financial responsibility. Section 2154 (a65)–(a67). The statute defines a motor vehicle liability policy as an owner's or operator's policy of liability insurance certified by an insurance carrier as stated above, Section 2154(a4), and this policy and its coverage must insure the insured or either (other) person against loss for liability imposed by law for damages because of bodily injury or death of any person caused by accident and arising out of the operation of the motor vehicle. Section 2154(a6).

The requirements of the statute, in short, apply only to policies certified as proof of financial responsibility in accordance with the Act. The scheme of the statute is to afford sanctions against any person whose operation of a motor vehicle has resulted in injuries to others, unless he satisfies judgments against him for damages arising from the operation of the vehicle and also proves in the manner provided by the statute that he is financially able to respond in damages for any accidental injury that may subsequently occur. This interpretation of the statute is in accordance with the general holding that financial responsibility acts somewhat similar to the Virginia statute do not apply to policies which have not been certified as proof of financial responsibility at the time of the accident. See, Rasinski v. Metropolitan Cas. Ins. Co., 117 N.J.L. 490, 189 A. 373; Anderson v. American Automobile Ins. Co, 50 R.I. 502, 149 A. 797; Sutton v. Hawkeye Cas. Co., 6 Cir., 138 F.2d 781; American Mutual Liability Ins. Co. v. Ocean Accident Guarantee Corp., 87 N.H. 374, 180 A. 249; McLaughlin v. Central Surety & Ins. Corp., 11 N.J.Misc. 440, 166 A. 621; Cohen v. Metropolitan Cas. Ins. Co., 233 App.Div. 340, 252 N.Y.S. 841. These cases are especially pertinent because it is held in Virginia that when the legislature of one state adopts the statute of another state, such legislature is pre-

sumed to have adopted the construction placed upon it by the courts of that state. Lumbermen's Mutual Cas. Co. v. Indemnity Ins. Co., 186 Va. 204, 42 S.E.2d 298. The Virginia statute seems to have been taken from the New York Act, and in Cohen v. Metropolitan Cas. Ins. Co., supra, the following was said in respect to the point under consideration [233 App.Div. 340, 252 N.Y.S. 842]: "A reading of the whole act, and, in particular, sections 94-i, 94-d and 94-e, convinces us that the words 'Motor Vehicle Liability Policy' as defined in the act must refer to 'required' policies only. To make the act applicable to all liability policies would mean that whenever such a mishap occurred the insurance carrier would always be absolutely liable under all circumstances. We cannot concur with this reading. The purpose to be furthered by the act, and its limitations, are clearly apparent. It is intended to protect the public from suffering loss through the carelessness of automobile owners who have manifested their financial irresponsibility. It differentiates between car owners who have shown themselves to be irresponsible, and those who have not. It declares that when those who carry policies through legal compulsion cause damage in automobile operation, their insurance carriers are absolutely liable for the resulting loss; but it lays down no such rule in the case of the automobile owner voluntarily carrying such a policy, whose responsibility has never been questioned. The construction contended for by the plaintiff would encourage fraud and deceit, and would create a legal relationship so unfair and unreasonable as to be unconscionable."

This interpretation was expressly adopted by the Virginia Legislature by an amendment of the statute in 1948, Section 2154 (a14)a, enacted after the damages in suit occurred, which provides that "the provisions of this act shall not apply to any policy of insurance except as to liability thereunder incurred after certification thereof as proof of financial responsibility." This amendment made more explicit what was already indicated by the provisions of the statute to which reference has been made.[4]

We come then to examine the ground on which the District Judge based his decision, namely that the Insurance Company is estopped to deny that the injuries were accidental in view of the determination of

4. It was held in Hartford Accident & Indemnity Co. v. Wolbarst, 95 N.H. 40, 57 A.2d 151, that a reference in a policy of automobile insurance to the Motor Vehicle Financial Responsibility Statute of New Hampshire, such as appears in the policy in suit, was sufficient to make the statute applicable to the case and to justify the interpretation of the phrase injuries "accidentally sustained" in the policy to include injuries intentionally inflicted by the operator of a motor vehicle, on the ground that the phrase is to be looked at from the point of view of the injured person rather than from that of the person causing it. This phrase does not occur in the policy required by Section 2154 (a6) of the Virginia statute which requires a policy, which will insure the insured against loss from liability for damages from bodily injury or death "caused by accident." Moreover, the New Hampshire statute does not contain the important exceptions of the Virginia statute, to wit: (1) Section 2154 (a33) which excludes from the preceding section any owner who, at the time of an accident with respect to the motor vehicle involved, has a standard provision automobile liability policy; cf. §§ 5 and 8 of Ch. 122 of Revised Laws of New Hampshire, 1942; and (2) the provision contained in Section 2154 (a14) set out above.

Wheeler v. O'Connell, 297 Mass. 549, 9 N.E.2d 544, 111 A.L.R. 1038, upon which appellees also rely, is not relevant because it related to a policy issued under the Compulsory Auto Insurance Law of Massachusetts, whereby resident owners, with certain enumerated exceptions, seeking registration of their motor vehicles are required to carry a liability policy which indemnifies the insured against loss by reason of liability to pay damages for bodily injuries sustained during the term of the policy. It was later held in Sheehan v. Goriansky, 321 Mass. 200, 72 N.E. 2d 538, 173 A.L.R. 497, wherein a noncompulsory motor vehicle liability policy was involved, that the word "accident" means an unexpected happening occurring without actual intention. See Appleman on Insurance Law and Practice, §§ 4295-4297.

the Virginia court that the collision was caused by Wagner's negligence. In his opinion the judge invoked "the principle, variously phrased by the courts but well settled, to the effect that where an indemnitor has notice of and opportunity to defend an action against his indemnitee, he is bound by material facts established against the indemnitee whether he appeared in the defense of the action or not." The judge also pointed out that the policy in the case provides that "as respects such insurance as is afforded * * * under coverages E and F, the company shall defend in his name and behalf any suit against the insured alleging such injury or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

In support of the conclusion that the Insurance Company is now estopped to show that the damages from the collision were not covered by the policy, the defendants rely on the decisions in Miller v. U. S. Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75; Stefus v. London & Lancashire Indemnity Co., 111 N.J.L. 6, 166 A. 339; Jusiak v. Commercial Cas. Co., 169 A. 551, 11 N.J.Misc. 869; Jackson v. Maryland Cas. Co., 212 N.C. 546, 193 S.E. 703; cf. American Cas. Co. v. Brinsky, 51 Ohio App. 298, 200 N.E. 654; B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709. Special reliance was placed by the District Judge upon Miller v. U. S. Fidelity & Casualty Co., supra, wherein the holder of an automobile insurance policy, having paid a judgment for damages recovered against him by an injured person in a Florida court on the ground of negligence, sued the Insurance Company in Massachusetts to recover his outlay. The policy insured the holder against damages imposed upon him for bodily injury accidentally caused by the use of his car, and also obligated the company to defend all suits against the insured where such damages were claimed. The company, however, refused to defend the Florida suit and offered to show in the subsequent suit of the insured against it in Massachusetts that the injuries were not caused by accident but by the intentional act of the insured when, in the course of a violent dispute, he deliberately crowded the car of the injured person off the road. The trial court found that the insured's act was intentional, and absolved the company from responsibility; but on appeal the Supreme Court of the State applied the principle on which the District Judge relied in the present suit and held that the company was bound by the Florida judgment.

█ It is obvious that this case is closely similar to the case at bar and furnishes an apt precedent for the decision of the District Judge. We are, however, unable to follow it because, in our opinion, it extends the principle to a situation to which it does not apply and overlooks the true ground on which the principle is based. The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee by either party to the indemnity contract may be presented. The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnitee where their interests in the defense of the suit are identical.

It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which

it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance. "If it cannot do this," as was said in the dissenting opinion in Stefus v. London & Lancashire Indemnity Co., 111 N.J.L. 6, 166 A. 339, 341, "it is at the mercy of every unscrupulous litigant who, regardless of his facts, sees fit to falsely allege a claim on which the insurance company would be liable and thereunder establish another claim on which no liability could attach, and forsooth collect because the insurer cannot show the true facts."

In accord is Restatement of the Law of Judgments, Section 107(a), where the rights of indemnitee and indemnitor inter se after judgment against one of them are set out, and it is stated that if the third person has obtained a valid judgment against the indemnitee, both indemnitor and indemnitee are bound as to the existence and extent of the liability if the indemnitor has been given reasonable notice of the action and requested to defend; but in Comment (g) it is stated that this rule is binding only as to issues relevant to the proceeding; and that the judgment against the indemnitee does not decide issues as to the existence and extent of the duty to indemnify, and that in a subsequent action the indemnitor may show that the circumstances under which he was required to give indemnity do not exist. To the same effect it is said in Freeman on Judgments, 5th Ed., § 448, that the general rule extends only to cases where the obligation to defend arises, and that this duty does not exist where the indemnitor would not be permitted to litigate matters which would determine whether an obligation on his part had arisen. "A third party cannot be called upon to defend an action where his showing himself not to be liable will not necessarily result in a judgment in favor of a party asking him to defend." See also, Appleman on Insurance, Law and Practice,

§ 4686; Pfarr v. Standard Oil Co., 165 Iowa 657, 146 N.W. 851, L.R.A.1915C, 336.

When the insurer desires to make the defense that the injuries are not within the coverage of the policy, it may take the risk of refusing to defend the suit against the insured or it may be able to reserve the defense of non-coverage for a subsequent suit under a non-waiver agreement. It is significant that the first course was approved in Massachusetts in Klefbeck v. Dous, 302 Mass. 383, 19 N.E.2d 308, decided subsequently to Miller v. United States Fidelity & Casualty Co., supra, on which the appellee especially relies, where the Insurance Company unsuccessfully defended the insured in a suit for damages caused by the negligent driving of his car. Thereafter the injured party sued the Insurance Company under a statute similar to Section 4326a of the Virginia Code to recover the amount of the judgment whereupon the insurer offered to show that the policy was invalid by reason of misrepresentations of the insured when it was issued; but the court held that the company was estopped to make this showing. The Court said 302 Mass. at page 387, 19 N.E.2d at page 311: "The company could investigate the claim and determine whether it came within the contract of insurance. If satisfied that the accident was not within the coverage, it could disclaim liability and withdraw from the case. * * * The company, however, could not, after having acquired information sufficient to warrant a disclaimer, continue in defense of the action and, upon the rendition of an adverse verdict, then for the first time rely upon such information and withdraw. It was bound to exercise good faith and due diligence." [5]

An illustration of the defense of the suit of the injured party by an insurance company on behalf of the insured under a non-waiver agreement is found in State Farm Mut. Automobile Ins. Co. v. Coughran, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970, where

5. It is difficult to reconcile these two decisions of the Massachusetts court for in the Miller case the Insurance Company was held liable although it refused to defend the suit against the insured and thus pursued the course which under the later decision would have enabled it to show, when sued by the policy holder, that the damages were not covered by the policy.

after judgment against the car owner for damages caused by the negligent driving of the car, the Insurance Company, in a suit against it by the injured party based upon the judgment, was permitted to show that the risk was not within the policy because the car was not being driven at the time by the insured, his paid driver, a member of his family, or a person acting under his authority within the fair intendment of the policy.

This limitation of the duty to defend is clearly applicable to the pending case. It is obvious that the Insurance Company was not qualified to undertake the defense of the insured in the suits by the injured parties against him, and that this disqualification was due to the insured's own conduct. It was not possible for the company in these suits to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints. See Pfarr v. Standard Oil Co., 165 Iowa, 657, 671–672, 146 N.W. 851, L.R.A.1915c, 336.

The situation is not changed by the express agreement of the company in the policy in suit to defend any suit against the insured based upon alleged actions within the coverage of the policy. The clear purpose of this provision is to impose upon the company not only the obligation to pay any judgment against the insured, but also to bear the burden of defending any suit against him within the purview of the policy. It could not have been intended, however, to extend the coverage of the policy or to nullify its conditions. That would have been the case if the company were not only bound to defend any action for damages alleged to have been caused by accident due to neglect, but should thereby be estopped to show in any court that the damages were intentionally caused by the criminal conduct of the insured. If that were so, the assault and battery clause would be effectively excised from the indemnity contract and the insured, as well as the injured party, as subrogee of the rights of the insured, would be able to avoid one of the conditions upon which the policy was issued. The Insurance Company was justified in withdrawing from the defense of the suit in the Virginia court when the character of the insured's conduct was disclosed, and by so doing, it preserved its right to make its present defense.

The decision in this case cannot yield to the public policy expressed in the Compulsory Insurance or Motor Vehicle Financial Responsibility Acts of other states designed for the salutary purpose of compensating persons injured in the operation of automobiles. We are bound by the terms of the policy in suit, interpreted in the light of the Virginia statutes and the decisions of the Virginia courts. When the meaning of the contract is ascertained in this manner, it is seen that the question for decision is not one of estoppel by judgment, but one of coverage of the contract. The parties injured or killed by the criminal conduct of the insured have no greater rights against the company than he possessed, for under the Virginia statute, Section 4326a of the Virginia Code, a person injured by a party carrying indemnity insurance is simply subrogated to his rights. Indemnity Ins. Co. v. Davis' Adm'r, 150 Va. 778, 788, 143 S.E. 328. In this case Wagner accepted a policy which excluded injuries intentionally inflicted by him from the coverage; and if it be true, as charged, that he intentionally caused the serious and fatal injuries for which the appellees seek recovery from the company, he released the company from its obligation to defend the suits against him so that it was not bound by the judgments obtained. The injured parties and their representatives are in no better situation, and the result is that the company is entitled to its day in court to show, if it can, that its policy did not cover the injurious acts which the insured committed.

The judgment of the District Court is reversed and the case remanded for further proceedings.

Reversed and remanded.

PARKER, Circuit Judge (dissenting).

I think that the judgment appealed from should be affirmed for reasons adequately stated in the opinion of the learned judge below, which is in accord with all decided cases dealing with the question involved. Miller v. U. S. Fidelity & Guaranty Co., 291 Mass. 445, 197 N.E. 75; Stefus v. London & Lancashire Indemnity Co., 111 N.J. L. 6, 166 A. 339; Jusiak v. Commercial Casualty Co., 169 A. 551, 11 N.J.Misc. 869; Jackson v. Maryland Casualty. Co. 212 N.C. 546, 193 S.E. 703. See also United Services Automobile Ass'n v. Zeller, Tex.Civ. App., 135 S.W.2d 161; State Farm Mut. Automobile Ins. Co. v. Wright, 173 Va. 261, 3 S.E.2d 187.

The insurance company undertook "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile". There was a judgment against the insured for damages because of negligence in the operation of the automobile. This was a liability which the company had expressly agreed to pay and the judgment establishing it was binding upon the company as well as upon the insured. See 30 Am.Jur. pp. 970–971, 973–974; Robbins v. Chicago, 4 Wall. 657, 672, 18 L.Ed. 427; Inhabitants of Milford v. Holbrook, 9 Allen, Mass., 17, 85 Am, Dec. 735; E. I. Du Pont de Nemours & Co. v. Richmond Guano Co., 4 Cir., 297 F. 580, 582. As said by this Court in the case last cited: "It is well settled that when a person is responsible over to another, either by operation of law or by contract, and has notice of a suit against the other, and an opportunity to appear and defend, he is not afterwards to be regarded as a stranger to the action, but is bound by the judgment therein, whether he appeared or not."

It is true, of course, that where a question affecting coverage is not adjudicated in the suit against the insured, the judgment is not binding on the company as to that question, see State Farm Mut. Automobile Ins. Co. v. Coughran, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970; but here the question affecting coverage was directly adjudicated in the suit against the insured when he was held liable therein on the ground of negligence. To permit the company to deny liability now, on the ground that the injury was not negligent but intentional is to permit it to litigate again a matter covered by the judgment against the insured, without averring or even suggesting fraud or collusion in its procurement. This seems to me to be clearly contrary to well settled law. As was well said by the Supreme Judicial Court of Massachusetts in the case of Miller v. U. S. Fidelity & Guaranty Co., supra [291 Mass. 445, 197 N.E. 77]: "Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery by the insured in an action on the policy. (Citing cases.) This case is but one instance under a rule of broad application that an indemnitor, after notice and an opportunity to defend, is bound by material facts established in an action against the indemnitee."

The fact that the company could not assert in the original case that the injury was not negligent but intentional without prejudicing the defense of that case means merely that the defense which it had undertaken was difficult. It furnishes no ground for absolving the company from application of the well settled rule that the judgment rendered is binding upon it as to issues actually adjudicated; and there can be no question but that the judgment adjudicated that the injury in question resulted from insured's negligence. "The very ground of liability against the indemnitor was found to exist and was necessarily adjudicated in the original suit." B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709, 712.