CENTENNIAL INSURANCE COM-
PANY, Plaintiff,

v.

Robert C. MILLER and Anne K. Miller, and Quincy Carmen, Defendants.

Civ. No. 9304.

United States District Court
E. D. California.

Feb. 10, 1967.

V. Barlow Goff of McDonough, Holland, Schwartz, Allen & Wahrhaftig, Sacramento, Cal., for plaintiff (Centennial Ins. Co.

Cavan Hardy of Bradford, Cross, Dahl & Hefner, Sacramento, Cal., for defendants Robert and Anne Miller.

Charles F. Fogerty, of Hughes, Maul, Fogerty & Dezzani, Placerville, Cal., for defendant Quincy Carmen.

## MEMORANDUM AND ORDER

MacBRIDE, District Judge.

This is a declaratory judgment action brought by plaintiff Centennial Insurance Company to determine whether it is liable under a policy of insurance. Jurisdiction is founded upon diversity of citizenship.

The policy in question was issued to defendant Robert C. Miller in September, 1964. It protected Miller against claims for bodily injury or medical payments which he might become legally obligated to pay. The policy excluded claims based upon intentional or wilful acts of the insured, an exclusion which is codified in California Insurance Code § 533. In its initial complaint, Centennial alleged that an action was pending in the Superior Court of El Dorado County in which Quincy Carmen, also a defendant in this action, sought damages from Miller for injuries caused by a gunshot fired by Miller. Since the advent of this action, Carmen was awarded $75,000.00 in damages after a jury trial in the superior court. That judgment has become final. Miller was defended in the superior court action by attorneys retained by Centennial. The policy provided that the insurer would defend any actions covered by the policy. Since there was doubt as to whether Miller's acts were covered, Centennial entered into an agreement with him which provided that it would defend the suit by Carmen without prejudice to its rights to litigate the question of coverage The consideration recited was the desire of both parties to cooperate to reduce to a minimum any financial loss resulting from the shooting incident and to postpone the controversy over the policy until final determination of any claims arising from the incident. The agreement was signed by Miller and the attorney for Centennial and is a part of the record in this case.

Defendants contend that the issue of whether Miller acted intentionally and maliciously in shooting Carmen was presented in the superior court action. This assertion is based on the fact that in the state action Miller's attorneys identified in their pre-trial memorandum the issue of intentional conduct as one which would be presented in the case, and urged it as a ground to support a

motion for judgment notwithstanding the verdict. In that motion Miller claimed the facts in the record would support only a verdict based on assault and battery, not on negligence. It is clear, however, that the only issue that was before the trier of fact and the only issue decided by the trier of fact was whether or not Miller was negligent as to Carmen. The pre-trial order of Judge Byrne, which is part of the record in this case, contains this order: "Plaintiff's motion to amend the complaint by interlineation to state only a cause of action for negligence is granted." No instruction regarding the possibility that Miller's actions might constitute an intentional tort was given for any purpose by Judge Roberts, who tried the case in superior court. Thus, the judgment in favor of Carmen was based solely on a finding that Miller was negligent.

Defendants have now moved for summary judgment on the ground that the state court judgment against Miller is res judicata or, in the alternative, collaterally estops plaintiff from litigating the issue of coverage in this court. Defendants urge that the finding of negligence in the superior court action precludes Centennial from now asserting that Miller's conduct was intentional.

 Without delving into the nuances of res judicata and collateral estoppel, the basic differences between the two doctrines should be noted. In general, res judicata is the correct term to describe the conclusive effect in subsequent litigation of a prior final determination on the merits of the same cause of action, including all matters that might have been decided, involving the same parties and those in privity. The prior adjudication acts as a *bar* to the entire subsequent suit on the same cause of action. Collateral estoppel differs slightly, but significantly. The requirement of "sameness" as to parties or those in privity is identical to that in res judicata, but the suit need not involve the same cause of action. Where collateral estoppel is invoked, there is a suit on a different cause of action, and

only facts which were actually determined from the adversary process in the prior action are conclusive upon the parties. The subsequent suit is not barred, but the parties are *estopped* from relitigating those facts previously put in issue. For an excellent discussion, replete with citations, see 1B Moore's Federal Practice, paragraphs 0.405, 0.441 (2d ed. 1965).

 From these precepts, this action for declaratory judgment suggests a collateral estoppel situation, due to the difference in causes of action. In order to succeed in their motion for summary judgment then, defendants must show that the parties here are identical or in privity with those in the tort suit against the insured, and that the facts or issues determined in that suit are conclusive of the outcome here. In diversity actions, the forum state's rules on res judicata and collateral estoppel are controlling in the federal courts as an aspect of the doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Gramm v. Lincoln, 257 F.2d 250 (9th Cir. 1958); see Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447 (1939); cf. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

Some controversy exists as to whether the situation of an insurer seeking a declaratory judgment of non-coverage after its insured had been found negligent is barred or estopped by principles of res judicata. The two leading cases, each representing an opposite view, are Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949), cert. den., Beverage v. Farm Bureau Mut. Ins. Co., 339 U.S. 914, 70 S.Ct 575, 94 L.Ed. 1339 (1950), and Miller v. United States Fid. & Cas. Co., 291 Mass. 445, 197 N.E. 75 (1935).

In the *Miller* case, a judgment against an insured on a complaint which alleged injury due to negligence was held to preclude the insurer, who had refused to defend the insured in the negligence action, from defending against the in-

sured's action on the policy on the ground that the tort was intentional. *Hammer* was decided by a divided panel of the fourth circuit. The case in essence involved a liability insurer which had initially undertaken defense of a wrongful death suit against its insured. The theory of the case was negligence. Subsequently, the insurer withdrew its defense after the insured was convicted of the murder of plaintiff's decedent. The reason for withdrawal was an exclusion in the policy of damages occasioned by the insured's intentional acts. The insured did not contest the wrongful death action, and the plaintiff recovered judgment on the theory of negligence. In the ensuing action for declaratory judgment on the issue of coverage, the district court rendered summary judgment against the insurer on the ground that the prior suit had decided that the insured's conduct was negligent. The fourth circuit reversed, saying that the insurer was not estopped because

> [i]t was not possible for the company * * * to defend the insured, and at the same time to protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy, for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints. 177 F.2d at 801.

The majority opinion in *Hammer* disagreed with the result in *Miller,* supra. In effect, it said that *Miller* was a perversion of the principle of collateral estoppel since the underlying rationale of the doctrine, identity of interests of the parties in both suits, was not served by its application in those circumstances. Chief Judge Parker in his dissent in *Hammer* called *Miller* "well settled law" and added:

> The fact that the company could not assert in the original case that the in-

jury was not negligent but intentional without prejudicing the defense of that case means merely that the defense which it had undertaken was difficult. It furnishes no ground for absolving the company from application of the well settled rule that the judgment rendered is binding upon it as to issues actually adjudicated; and there can be no question but that the judgment adjudicated that the injury in question resulted from insured's negligence. 177 F.2d at 802.

Professors Moore and Currier disagree with the *Hammer* approach, but recognize the insurer's dilemma entailed in the *Miller* rule:

> [G]iven notice and an opportunity to defend, the insurer is bound by the judgment on the negligence claim, whether or not he defends; and, if he does defend, he cannot contend that insured was guilty of intentional wrong-doing. But the insurer is not entirely without a remedy: a suit against the insured and the injured claimant for a declaratory judgment of non-coverage, *prior to rendition of judgment in the suit against the insured,* may be entertained at the discretion of an appropriate court. * * * Of course, the insurer cannot be certain that the declaratory judgment will precede the damage judgment against the insured, in point of time. 1A Moore's Federal Practice, paragraph 0.411[6] n. 19 (2d ed. 1965).

On the other hand, there is respectable support for the *Hammer* case. See 63 Harv.L.Rev. 898 (1950) [1]; 35 Va.L.Rev. 1095 (1949).

In California, the applicability of collateral estoppel to such factual settings as were present in *Hammer,* supra, and *Miller,* supra, is far from clear. Disregarding the cases cited in the briefs which involve attempted relitigation of an issue which clearly was decided in a

---

1. The author comments that in jurisdictions where the *Miller* rule is followed, it is common practice for injured plaintiffs to sue on a negligence theory even when the tort is intentional. Collateral estoppel is thus used to emasculate exclusions in the policy for intentional torts.

prior suit after adversary contention, (see, e. g., Ford v. Providence Washington Ins. Co., 151 Cal.App.2d 431, 311 P.2d 930 (1957); Artukovich v. St. Paul-Mercury Indem. Co., 150 Cal.App.2d 312, 310 P.2d 461 (1957)), there still appears to be some California case law which bears on the problem.

The defendants urge that Escobedo v. Travelers Ins. Co., 197 Cal.App.2d 118, 17 Cal.Rptr. 219 (1961) compels the conclusion that the law of California is in accord with *Miller*, supra. A reading of the case discloses that it stands for much less. In *Escobedo*, the court was concerned with the effect of a prior action for damages upon a suit by the successful plaintiff against the insurer of the tortfeasor. The insurance company contended that the conduct of the insured was intentional and therefore exempt. This was similar to the *Hammer*, supra, and *Miller*, supra, situations, except that in *Escobedo* the issue of whether the tortious conduct was negligent or wilful was decided by the jury, albeit for a different purpose than to establish coverage under the policy. In the first trial, plaintiff sued for the wrongful death of his decedent. He joined as defendants the driver and owner of the vehicle which caused the fatal injuries. The insurer defended both driver and owner. The owner interposed a defense that the conduct of the driver was wilful, which exonerates an owner from vicarious liability under California law. A special verdict was prepared for the jury which asked that it determine whether the driver had acted negligently or wilfully. The jury decided that the driver's conduct was negligent. Thus, in *Escobedo*, there was a prior adversary determination of the issue of negligent versus intentional conduct, and the District Court of Appeal for the Second District held that this determination was binding upon the insurer.[2] In a situation such as *Escobedo*, collateral estoppel is on much surer footing than under the facts of *Miller*, supra.

There is indication by way of dicta that some California courts may favor a rule binding the insurer in all cases by the results in the first trial, at least in those instances where it refused to defend the insured against a complaint which stated a cause of action within the terms of the policy. See Karpe v. Great American Indem Co., 190 Cal.App.2d 226, 231, 11 Cal.Rptr. 908 (1961); Lamb v. Belt Casualty Co., 3 Cal.App.2d 624, 631, 40 P.2d 311, 314 (1935). The statements in these cases are hardly determinative of California law on the subject though, and their applicability is questionable where the insurer does defend the action against the insured.

■ However doubtful the status of the *Hammer* and *Miller* rules may be in California, there is one facet of the instant case not found in those cases which places it outside the ambit of collateral estoppel. The parties to a lawsuit may agree in advance to reserve the right to litigate matters in a subsequent suit which might otherwise be precluded by res judicata or collateral estoppel. See Riordan v. Ferguson, 147 F.2d 983 (2d Cir. 1945); 1B Moore's Federal Practice § 0.405 [1] (2d ed. 1965). This procedure has found approval in an insurance situation analogous to the present one in the recent decision of the California Supreme Court of Gray v. Zurich Ins. Co., 65 A.C. 267, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

The *Gray* case involved a suit by an insured against his insurer for failure to defend an action filed against him on a complaint alleging that he had committed an assault. A judgment was recovered against the insured in the third party action. By way of defense in the action on the policy, the insurer contended that the policy, like the one here, excused defense of actions based on intentionally caused bodily injury, and that if the company had defended, it would involve a conflict of interest with the insured. In answer to the first defense,

---

2. After remand, the trial court rendered summary judgment in favor of plaintiff. This judgment was affirmed on appeal.

Escobedo v. Travelers Ins. Co., 227 Cal. App.2d 353, 38 Cal.Rptr. 645 (1964).

the supreme court held that where the policy covered bodily injury, except that caused intentionally, it required the insurer to defend any suit in which bodily injury was alleged, even if the allegations were groundless or fraudulent. The court said that the insurer's obligation extended to any suit that potentially sought damages within the coverage of the policy. As to the argument that defense of the insured would have created a conflict of interest, the court, per Justice Tobriner, observed:

> Since, however, the court in the third party suit does not adjudicate the issue of coverage, the insurer's argument collapses. The only question there litigated is the insured's *liability*. The alleged victim does not concern himself with the theory of liability; he desires only the largest possible judgment. Similarly, the insured and insurer seek only to avoid, or at least to minimize, the judgment. As we have noted, modern procedural rules focus on whether, on a given set of facts, the plaintiff, regardless of the theory, may recover. Thus the question of whether or not the insured engaged in intentional conduct does not normally formulate an issue which is resolved in that litigation.
>
> In any event, if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. At this time the insurer can raise the noncoverage defense previously reserved. In this manner the interests of the insured and insurer in defending against the injured party's primary suit will be identical; the insurer will not face the suggested dilemma. 65 A.C. at 283, 284, 54 Cal. Rptr. at 114, 419 P.2d at 178. (Footnotes omitted.)

■ This statement by the Supreme Court of California might be sufficient evidence of the state of the law in California to decide that collateral estoppel does not apply to an insurer who has defended, even if there were no reservation of the right to litigate coverage later. This is not necessary in the present case, however, since the previously-mentioned agreement between Centennial and Miller is a sufficient reservation to bring it under the California court's suggested solution to the dilemma. The pertinent provisions of the agreement, entitled "Reservation of Rights and Non-Waiver Agreement," are as follows:

> [A]ll rights and defenses of the CENTENNIAL INSURANCE COMPANY under said policy, and all endorsements thereto, are hereby reserved until the final determination of any and all claims sued upon in said action [the Carmen v. Miller suit] with the same force and effect as though the said CENTENNIAL INSURANCE COMPANY had not undertaken any investigation or defense in said action. * * * ROBERT C. MILLER hereby waives any right to ever contend that any action taken by the CENTENNIAL INSURANCE COMPANY in defending said action has waived or will waive any policy conditions, provisions, or rights of any kind which the said CENTENNIAL INSURANCE COMPANY has under said insurance policy.

■ Defendants contend that the statements in *Gray*, supra, are mere dicta, and in any case, the facts of that case are so different as to make them inapplicable here. I cannot agree. The necessary implication of the statement quoted above is that in a case where the insurer defends the insured in a personal injury action, the issue of whether or not the injury is intentional is not decided unless that is the theory of the complaint. While these sentences may not have been the heart of the *Gray* decision, there is no reason to believe that the court was offering superfluous information. At any rate, the court did indicate an approved course of conduct

in these cases which the plaintiff here has followed.

It is, therefore, ordered that defendants' motion for summary judgment be, and the same is hereby, denied.